# CHARLESTON.

HECTOR COAL LAND CO. v. JONES *et al.*

Submitted January 30, 1917.   Decided February 13, 1917.

1. EQUITY—*Recital in Decree—Jurisdiction.*

A recital in a decree that process has been "regularly executed and served upon defendants", or that "all the defendants have had notice of the proceeding either by personal service or by an order of publication duly posted and published as required by law", operates as a judicial ascertainment that the court has jurisdiction of the subject matter of the suit.   (p. 621).

2. TAXATION—*Tax Sale—Title—Statute.*

Whatever right, title, estate or interest in land an individual purchaser at a sheriff's tax sale would acquire under the curative provisions of section 25, chapter 31, Code, vests in the state when a purchaser thereat, with like effect, without a deed or other conveyance therefor, subject only to the right of redemption granted by section 33 of that chapter.   (p. 621).

3. SAME—*Tax Title—Evidence—Other Proceedings.*

When necessary to re-enforce a *prima facie* title to real estate acquired under decrees of sale and confirmation entered in a suit prosecuted in the name of the state under chapter 105 of the Code to sell land forfeited for non-entry and non-payment of taxes thereon, a plaintiff in ejectment may introduce parts of the records of other similar proceedings brought to condemn the same land to sale as forfeited for like omissions charged against other claimants thereof, to which proceedings they and his predecessors in title either originally were or thereafter by petition became parties defendant.   (p. 621).

4. EJECTMENT—*Exceptions and Reservations—Identity—Evidence.*

If by a witness whose familiarity with the land conveyed by an inclusive deed or grant qualifies him to locate with reasonable certainty the exceptions and reservations therein contained, a plaintiff in ejectment proves in general terms that no part of the land in controversy is within the parts excepted or reserved, he thereby makes a sufficient *prima facie* case of location outside thereof, under the rule as to the burden of proof in such cases, and, when not controverted by rebuttal testimony, he is not required to identify the exceptions by proving the location of the boundaries thereof. (p. 627).

Error to Circuit Court, Logan County.

Ejectment by the Hector Coal Land Company against H.

C. Jones and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Maynard F. Stiles, C. E. Goettman* and *I. P. Baer,* for plaintiffs in error.

*Campbell, Brown & Davis* and *Lilly & Shrewsbury,* for defendant in error.

LYNCH, PRESIDENT:

The Hector Coal Land Company, under a claim of title, brought ejectment, and on a directed verdict obtained the judgment by the defendants charged to be erroneous, finding for the plaintiff a fee simple title to the 2149 acres sued for and awarding to it the possession thereof. Since by their chief contention they deny plaintiff proved title to the land in controversy, it becomes necessary to determine from the evidence whether plaintiff actually is entitled to the possession of the land it claims.

In a school land proceeding in the circuit court of Wyoming county against the 480,000 acre Morris grant to sell the same as forfeited for non-assessment and non-payment of taxes, by decree in 1885, 40,000 acres thereof, of which 20,000 acres was located in Logan county, were adjudged to be so forfeited and directed to be sold, and purchased by Jesse R. Irwin, to whom, upon confirmation by a decree entered in the cause, W. B. McClure, commissioner of school lands, as thereby directed, conveyed the land March 25, 1886. Out of the 20,000 acres located in Logan county, the grantee conveyed in the same year an undivided one fourth interest to each of the following named persons: C. F. Thomas, Alvin Irwin and Harris Hoyt. Jesse R. Irwin and such grantees (except Thomas), the wife of each joining, conveyed to Emma Idelia Pomeroy the 20,000 acre tract June 28, 1893. In the stipulation signed by counsel representing the parties to this litigation, it is admitted that the land claimed by plaintiff lies within the exterior boundaries of that tract. The deed therefor Mrs. Pomeroy caused to be recorded and the lands entered in 1894 for taxation on the land books of Logan county. As the taxes assessed against

her grantors for the year 1893, and to her for the next succeeding year, were not paid, the tract was returned delinquent for those years in the names of the grantors and grantee and by the sheriff sold to the state, for want of other bidders, at a tax sale made pursuant to the provisions of chapter 31 of the Code to enforce the statutory tax lien, neither she nor her grantors having in the meantime availed themselves of the privilege of redemption accorded by that chapter; and, as they continued in default, the auditor certified the tract to the commissioner of school lands of Logan county to be proceeded against as required by chapter 105, at the suit of the state against the former owners and claimants of the land.

In a suit brought and prosecuted, as directed, against Jesse R. Irwin and his grantees of undivided interests therein, including C. F. Thomas and Mrs. Pomeroy, the land was sold as forfeited to the state, and purchased by Stoddard and Hall, to whom upon confirmation of the sale the title was conveyed by Wilkinson as commissioner November 12, 1898. This title, through successive mesne conveyances, one of the deeds being by U. B. Buskirk in his own right and as trustee, finally vested in the plaintiff herein. If to Stoddard and Hall the decrees and deed in the Irwin suit transferred the fee simple title to the acreage so purchased, and they and their vendees have regularly paid the taxes chargeable thereto, and if as agreed the land in controversy in this action is a part of that acreage, *prima facie* plaintiff acquired and at the institution of this action had a title sufficient to sustain ejectment.

Pursuant to the stipulations of the parties, plaintiff to re-enforce its *prima facie* title, either as links in the chain thereof or as former adjudications binding C. F. Thomas, through whom defendants in part trace their claim to the land in controversy, was permitted to introduce, subject to exception for want of relevancy or competency, parts of the records in three school land proceedings brought in the name of the state of West Virginia, as then required by chapter 105 of the Code, against the Irwins and others, against Henry C. King and others, and against Alexander McClintock and others. The propriety and effect of the introduction of these

exhibits are challenged by defendants as incompetent and ineffective for either purpose intended by plaintiff or for any other legitimate purpose.

First, it is argued that the papers admitted in evidence do not sufficiently show that C. F. Thomas was a party served with process in any of the suits brought by the state to sell lands forfeited for non-entry for taxation and non-payment of taxes charged against them in the names of the prior owners. That Thomas was a party defendant in the suit of the state against Jesse R. Irwin and others, and was served with process, clearly appears from the caption of the bill, from service of process accepted for him by Jesse R. Irwin as "agent and attorney in fact", and from recitals in the decree that process had been "regularly executed and served upon the defendants", including Thomas by name. He was a party defendant to the fourth amended bill in the suit of the state against Henry C. King and others; and it appears from the stipulation of the parties herein that the King suit "was matured for hearing by entering, publishing and posting of the proper order of publication as to all parties mentioned in the fourth amended bill". That he was a party defendant and duly served in the suit of the state against Alexander McClintock and others appears from the caption of the bill therein and the recitals in the decree entered September 9, 1893, that all the defendants had notice of the proceeding either by personal service or by an order of publication duly posted and published as required by law. Whatever may be the general rule, certainly, when not controverted except by an indefinite assertion, recitals of this character in a decree of the court having jurisdiction of the subject matter of the controversy are either presumed to be true or treated as conclusive upon the question of the service of process and the entry and execution of an order of publication. *Craig* v. *Sibsell,* 9 Gratt. 131; *Moore* v. *Holt,* 10 Gratt, 284; *Arnold* v. *Arnold,* 11 W. Va. 449; *Central District & Printing Telegraph Co.* v. *Parkersburg & Ohio Valley Electric Railway Co.,* 76 W. Va. 120.

The land the title to which is the subject matter of this contest is wholly within one or partially within more than

one of the three enclosures of large boundaries of land granted by the commonwealth of Virginia in 1795 and 1796, either a tract of 500,000 acres or one of 480,000 acres granted to Robert Morris and 142,000 acres granted to DeWitt Clinton. Some part or all of each of these several tracts were proceeded against as forfeited in the three suits prosecuted by the state against Jesse R. Irwin and others, Henry C. King and others, and Alexander McClintock and others; the first suit involving the 480,000 acre grant, the second the 500,000 acre grant, and the third the 142,000 acre grant.

In the Irwin suit, as already observed, Jesse R. Irwin acquired title by the McClure deed to 20,000 acres located in Logan county. That title passed to Emma Idelia Pomeroy by the deed of July 28, 1893, and remains vested in the plaintiff here. In one of the exhibits by plaintiff introduced in evidence is a recital of an interference or interlock to the extent of one thousand acres between the tract sold to Mrs. Pomeroy by the Irwins and Hoyts and the DeWitt Clinton survey. The exact situs of the interlock is not disclosed.

The fourth amended bill of the state in the King suit alleged that the title to the 500,000 acre grant, situated in part in Logan county, had theretofore vested in the state because omitted from the land books of each of the counties in which it is located and the failure of the owners thereof to pay any taxes thereon for twelve years next succeeding the year 1883, wherefore it had become liable to be sold by the state for the benefit of the school fund. To this bill Jesse R. Irwin Harris Hoyt, the heirs of Alvin Irwin, C. F. Thomas and others were named defendants; and against them it is alleged that they claim title to some part of the 480,000 acre grant, and that between the two grants to Morris there is an overlap or interlock, but to what extent is not alleged. To this amended bill appeared by petition, as allowed by sections 16 and 17, chapter 105, Code, Stoddard and Hall, U. B. Buskirk as trustee and in his own right, Alexander McClintock, and numerous other claimants of some parts of the land proceeded against as forfeited. McClintock claimed to be the sole owner of the DeWitt Clinton 142,000 acres under conveyances regularly derived from the patentee, and that he

.and others whom he named have an interest in the 500,000 .acre Morris grant. He therein admits the forfeiture of the DeWitt Clinton tract, and prays leave to redeem it from the forfeiture, but contests the right claimed by King to redeem the Morris 500,000 acre grant.

In their petition filed in the King suit, Stoddard and Hall set up the title acquired by them through the proceedings in the Irwin suit to the 20,000 acres known as the Pomeroy lands. They also by denial put in issue the verity of the claim of King set up in his answer to the fourth amended bill, that the 500,000 grant overlaps any part of the 20,000 acres claimed by them and that he has any claim to that tract. But they do allege that tract is part of the 480,000 Morris grant, to the part of which conveyed to them by Wilkinson they assert title. After alleging therein the conveyances by Jesse R. Irwin to C. F. Thomas, Harris Hoyt and Alvin Irwin of an undivided one fourth interest each in the 20,000 acres conveyed to him by W. B. McClure, they charge that the delinquent tax sale of the 20,000 acres in 1895 by the sheriff of Logan county vested in the state the entire title held by the grantees of Jesse R. Irwin, including the one fourth interest claimed by C. F. Thomas. Pursuant to the prayer of the petition, by the decree of 1908 King was denied the right of redemption and the Hall and Stoddard tract was dismissed from that suit.

In the McClintock suit, instituted for the purpose of selling as forfeited the DeWitt Clinton grant, the Buffalo Coal & Coke Company and Altizer Coal Land Company, as grantees of the Stoddard and Hall title, intervened by petition, and moved the dismissal of the Pomeroy tract from that suit. The commissioner to whom the cause was referred reported, as directed by the court, that the title of the petitioners to the 20,000 acre tract was protected by §3, art. 13 of the constitution, and the dismissal of the tract from the King suit because not liable to sale for the benefit of the school fund or to redemption by King. This report a decree entered in 1910 "approved and confirmed, there being no exceptions or objections" thereto; and the court, "perceiving no just grounds of exceptions", decreed that none of the lands de-

scribed in the bill, with certain exceptions not important to notice, were liable to sale, on account of the adjudication made in the King suit by this court, "as well as on account of the sale thereof confirmed to Stoddard and Hall on the 3rd day of November, 1898" in the Irwin suit, "and the same are hereby dismissed from this suit".

As by §25, ch. 31, Code, in a purchaser at a tax sale under that chapter, who has obtained and caused a deed to be admitted to record, vests "such right, title and interest in and to such real estate as was vested in the person or persons charged with the taxes thereon for which it was sold, at the commencement of or at any time during the year or years for which such taxes were assessed, and all such right, title and interest therein of any other person or persons having title thereto who have not in his or their own name been charged on the land books of the proper county or assessment district with the taxes chargeable on such real estate for the year or years for the taxes of which the same was sold, and have actually paid the same as required by law, shall be transferred to and vested in the grantee, notwithstanding any irregularity in the proceedings under which the same was sold not herein provided for", and as by the same section it is provided further "that when there are more than one such owner of such real estate or persons charged with taxes thereon who are cotenants thereof or otherwise jointly interested therein, if the same be charged or otherwise jointly in them alone or one or more of them and others without naming the others, such right, title, interest and estate as was vested in all or any or either of them shall pass to and be vested in the grantee in such deed", and likewise as to the heirs or devisees of a decedent, so by section 32 the like right, title, interest and estate passes to and vests in the state when a purchaser at a delinquent tax sale, without the intervention of a deed therefor, and from her to a purchaser under decrees in school land proceedings authorized and prosecuted under the provisions of chapter 105, Code. These ample curative provisions, supplemented as they are by sections 6 and 19 of chapter 105, as interpreted in *State* v. *King*, 64 W. Va. 546 and 610,

*State* v. *Mathews,* 68 W. Va. 89, and *State* v. *Rohrbough,* 74 W. Va. 285, vested in the purchasers in the Irwin suit all the right and title of the state in the Pomeroy tract, however derived or claimed, whether by escheat, delinquency or forfeiture, notwithstanding any irregularity or error in such proceeding, or informality in the sale or conveyance therein, or any want of jurisdiction in the court to decree the sale; and by section 19 "such sales and conveyances and purported conveyances" made prior to its enactment in 1905 are "confirmed and made good and valid".

Subject only to the right to redeem within the period prescribed by law, the state by its purchase at the sheriff's sale in 1895 acquired the title to the 20,000 acres acquit of any prior right or claim thereto, from whatever source derived, not redeemed or redeemable under the provisions of chapters 31 and 105. That title the state passed to Stoddard and Hall, and they to the plaintiff. Their title in that tract thereby was clothed with superiority over the claim of any prior owner, and of any subsequent claimant except through a delinquency or forfeiture chargeable to them or their successors in title. The sale and deed to the purchasers under the decrees in the Irwin suit estop the state to reflect doubt upon the title she has granted. *State* v. *Mathews,* 68 W. Va. 89. Even should the 20,000 acres again become liable to sale, because of subsequent forfeiture, the owner in whose name the forfeiture occurred would still have the preferential right of redemption as between himself and those not in privity with him, except the title is transferred under §3, art. 13 of the constitution. This preference necessarily is predicated upon the well sustained theory that a decree and sale in such a proceeding give birth to a new title as of a patent or grant by the state. *State* v. *King, supra.*

Upon this theory, these exhibits were not improperly admitted; and if it be conceded that they do not strengthen plaintiff's right to a recovery, they do not operate to the prejudice of the defendants. For if it be true, as they contend, that the 20,000 acres became delinquent in the name of Buskirk, the dismissal of the tract out of the King and McClintock

suits ratified and confirmed the attempted exercise of the preferential right of redemption, thereby held to be sufficient.

What has been said also answers the contention of the defendants that the deed by Wilkinson to Stoddard and Hall, directed to be executed to them by the decree in the Irwin suit, is void and ineffectual to pass any title for failure to identify the land sold therein, because the description follows the calls of the Morris 480,000 acre grant, not the calls of the Irwin and Hoyt deed to Mrs. Pomeroy. This contention was urged also in *State* v. *King,* 64 W. Va. 610, as to the same deed; and it was there held that it was not the deed but the decrees of the court directing and confirming the sale in the Irwin suit, that defines the land conveyed. What was decreed to be sold, not what was granted, is determinative and definitive of the tract sold and purchased and intended to be conveyed. The opinion expressly states, what is pertinent here: "The Wilkinson deed may be said to be irregular and to an extent inconsistent with the proceedings upon which it is based. Most clearly the land sold to Stoddard and Hall by Hinchman, commissioner of school lands, pursuant to the proceedings aforesaid, was the 20,000 acres which had been conveyed to Mrs. Pomeroy. The record of the proceedings makes it clear that Stoddard and Hall purchased thereunder the land conveyed to Mrs. Pomeroy". Obviously therein was adjudicated the sufficiency and competency of the same deed to pass the title to the same tract of land. The whole or such parts of the record of proceedings for the sale of school lands as may be sufficient for the purpose, together with the deed made in pursuance thereof, should be looked to when necessary to identify the land sold and as evidence that the title of the state to such land vested in the grantee. *Feder* v. *Hager,* 69 W. Va. 160.

Although by defendants apparently deemed pertinent to this inquiry, *Beatty* v. *Edgell,* 75 W. Va. 252, and *Crawford* v. *Workman,* 64 W. Va. 10, we think are not decisive of the question of the sufficiency of the Wilkinson deed. In the Beatty case no decree or paper identified the land. The Crawford case merely denied the prayer for specific enforcement of a contract for the sale of real estate, impossible of identifi-

cation because indefinitely described in the contract, conformably with the doctrine usually applied in such cases.

The decree in the King case accepted as sufficient, although unduly delayed, Buskirk's effort to redeem from delinquency by payment of the taxes in arrears while the land was under the control of the auditor, and dismissed the 20,000 out of that suit. The sufficiency of that payment, the delinquency of the land, and the right of redemption were or could have been contested between Buskirk and any other claimant who was a party thereto and duly served with proper process, or injected themselves into the controversy by petitions filed under the authority of sections 16 and 17, chapter 105, Code. Nor was it necessary, as contended, that Buskirk should make other claimants parties to his petition in the King suit. *State* v. *Hicks,* 75 W. Va. 767.

The defendants, to justify their retention of possession of the land claimed by the plaintiff, introduced two deeds by Jesse R. Irwin to C. F. Thomas dated March 25 and August 21, 1886, for undivided fourth interests in the 20,000 acres covered by the Pomeroy deed. They trace their title to no other source. Nor was it necessary they should show any title, agreeably to the well established rule that the plaintiff in ejectment must rely on the strength of his own title, and not on the infirmity of the adversary title. These deeds, however, are significant, when viewed in the light reflected by the certificate of the auditor and the records of the school land proceedings introduced in evidence; from the first of which it appears that neither Thomas nor any of the defendants who claim in privity with John W. Hall, deceased, were charged with taxes on any land in his or their names in Triadelphia district, Logan county, wherein the Pomeroy tract is located; and from the second, that Thomas was a party in each of the school land proceedings.

The objection as to the admissibility of the uncontradicted testimony of the witness Sell, introduced by the plaintiff to locate the exclusions in the 500,000 acre grant and junior claims protected by the constitution and laws of the state in the Pomeroy 20,000 acres, is answered fully by the eighteenth point of the syllabus in *Winding Gulf Colliery Co.* v. *Camp-*

*bell,* 72 W. Va. 449, holding competent such evidence to establish *prima facie* the location of exceptions and reservations outside of the land in controversy, by proving in a general way that none of the exceptions is within the bounds of the land sued for.

While perhaps it may be true, as defendants contend, that the plaintiff's right to a recovery was a question for jury determination upon proper instructions, not by court direction, yet if the facts proved would have required an affirmative verdict the direction was not erroneous. The admission that the disputed area is within the Pomeroy tract, the title to which, as we have seen, clearly vested in the plaintiff through Stoddard and Hall, U. B. Buskirk in his own right and as trustee being an intermediary, without default as to non-entry and non-payment of taxes, or upon a default later cured by compliance with the state tax laws and judicially approved, excludes the conclusion that error clearly appears in the judgment complained of and that it ought to be reversed and a new trial awarded. We think no such excess of authority on the part of the trial court appears as warrants interference with the judgment rendered, and hence affirm it.

*Affirmed.*