### DINGESS et al. v. HUNTINGTON DEVELOPMENT & GAS CO.

(Circuit Court of Appeals, Fourth Circuit. February 15, 1921.)

No. 1828.

1. **Mines and minerals ⬤⧫55(5)—Reservation of "minerals" held to include natural gas.**

Under the settled law of West Virginia that the word "mineral" is not capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it to be ascertained from the language of the deed, the relative position of the parties, and the nature of the transaction, where a controversy over the title to land was settled by a conveyance of the land by one party to the other, who was

---

⬤⧫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in occupancy of the surface, with a reservation of "all the minerals, mineral substances. and oils of every sort and description," with the right to mine, bore wells, and use so much of the surface as required in operating mines or wells, the reservation *held* to include natural gas.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

2. **Evidence ⟸461(5)—Exclusion of extrinsic evidence to affect construction of reservation in deed held not error.**

On an issue as to whether a reservation of "minerals" in a deed included natural gas, the exclusion of evidence to show that at the time natural gas had not been commercially produced in the vicinity *held* not error.

3. **Taxation ⟸776—Tax deed held not to convey title to minerals.**

Under Code W. Va. 1913. c. 29, § 39 (sec. 923), providing that, when one person is the owner of the surface and another of the minerals under it, the assessor shall list the interests separately and assess each to its owner, a tax deed, based on taxes assessed to the owner of the surface, who was not the owner of the minerals, *held* not to convey title to the mineral rights.

4. **Evidence ⟸230(3)—Declaration of grantor after conveyance not admissible against grantee.**

A statement of a grantor in disparagement of his title, made after his conveyance, is not admissible against his grantee.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

. Ejectment by the Huntington Development & Gas Company against Henderson Dingess and others. Judgment for plaintiff, and defendants bring error. Affirmed in part, and reversed in part.

Maynard F. Stiles, of Charleston, W. Va., and C. S. Minter, of Logan, W. Va. (Pendleton L. Williams, of Huntington, W. Va., on the brief), for plaintiffs in error.

W. C. W. Renshaw and W. R. Thompson, both of Huntington, W. Va. (H. A. McCarthy, of Philadelphia, Pa., and Z. T. Vinson and J. H. Meek, both of Huntington, W. Va., on the brief), for defendant in error.

Before KNAPP, Circuit Judge, and ROSE, District Judge.

ROSE, District Judge. The defendants below are plaintiffs in error here, but it will be more convenient to refer to them and to their adversary in accordance with the positions they had in the trial court.

The plaintiff in an ejectment suit sought to recover from the defendants a number of tracts of land aggregating upwards of 1,300 acres, all parts of what are known as the Samuel Smith grants, the exterior bounds of which inclose some 206,000 acres, but from which previously granted tracts having a combined surface of 86,000 acres had been excepted. Of the land in controversy the plaintiff claimed the full ownership of over 1,200 acres and the mineral rights under some 165 more. The court instructed a verdict for the defendants for 11 acres, and for the plaintiff for all the rest, except 4 acres, and the jury gave the last to the plaintiff. Such of the defendants as have sued out this writ of error seek the reversal of the entire judgment, in so far

as it affects them, and in the alternative to set it aside as to certain tracts or interests claimed by them.

Such of their objections as go to the whole case assail the admission of certain evidence given by the plaintiff for the purpose of sustaining the burden of proof resting upon it to locate the exterior boundaries of the Smith grants, and to show that none of the land within those boundaries, but excepted from the grants, included any part of the land claimed by defendants. We cannot feel that there is any substantial merit in any of them. The exterior lines of the Smith grant have been before established in other cases. There appears to be no real question as to their location. We do not find it necessary or expedient to consider whether any of the somewhat meticulous objections made to some of the testimony of one of the surveyors produced by the plaintiff are as a matter of technical law well founded. If all of them in which there is any shadow of substance are sustained, there would be enough proof left to justify the instruction given by the court that the plaintiff had shown an undisputed record title to all those portions of the Smith grants included in this litigation. The evidence by which the plaintiff attempted to show that none of the land it sought to recover was included in any of the tracts excepted from the Smith grants was, under the West Virginia law as we understand it, both admissible and, in the absence of any attempt at rebuttal, conclusive. Winding Gulf Colliery Co. v. Campbell et al., 72 W. Va. 474, 78 S. E. 384; Hector Coal Land Co. v. Jones et al., 79 W. Va. 627, 92 S. E. 102.

[1] The purpose of rules of evidence is to ascertain the truth as to facts in issue, and not to take up the time of court and jury in listening to testimony as to something about which there is no real question. What has been said disposes of all the objections as to the rulings below, in so far as they affect by far the greater portion of the land in controversy. But as to that part of it in which confessedly plaintiff is not entitled to the surface other contentions are made. It appears that some 40 years ago the predecessors in title of the plaintiff had brought or threatened an ejectment suit against those through whom some of the defendants derived title. A compromise was made under the terms of which the plaintiff's grantors deeded the land with which we are now concerned to the predecessors in title of the defendants. Each of these deeds contained a provision by which the grantors reserved and excepted from its operation—

"all the minerals, mineral substances and oils of every sort and description, * * * with the privilege of mining, digging and excavating for said minerals, mineral substances and oils, and of boring and pumping for said oils, and of erecting and maintaining thereon all the necessary buildings, oil tanks, machinery and apparatus for working and operating all mines, pits, excavations and oil wells which now are or may be hereafter opened, worked and operated," on any part of the real estate, and "for storing and taking proper care of the products thereof. * * * *"

The reservation also included all necessary rights of way, with the right and privilege to operate and maintain railroads and other roads and pipe lines, such as might be necessary to the successful and convenient discovery, working and operating of the mines, pits, excava-

tions, and oil wells, and for carrying away the products thereof.   The defendants say that the exceptions and reservations did not include natural gas, and they assign as error that the court below otherwise ruled, and that it refused to permit them to prove that at the time the deeds were made natural gas was not a commercial product in that neighborhood.   In some states, such as Pennsylvania, grants or reservations of minerals, nothing else appearing, do not cover natural gas. Dunham & Shortt v. Kirkpatrick, 101 Pa. 36, 47 Am. Rep. 696; Silver v. Bush, 213 Pa. 195, 62 Atl. 832; Preston et al. v. South Penn Oil Co. et al., 238 Pa. 301, 86 Atl. 203.

Some 13 years ago the Supreme Court of Appeals of West Virginia, upon full consideration, declined to follow Dunham & Shortt v. Kirkpatrick, supra, and held that a reservation of "all minerals" includes petroleum and natural gas, in the absence of anything to the contrary in the deed itself, or fairly deducible from any facts within the knowledge of the parties, at the time.   Sult v. A. Hochstetter Oil Co., 63 W. Va. 317, 61 S. E. 607.   It is contended for the defendants that the mention in the reservations of mines, oil wells and oil tanks, and the silence as to gas and gas wells, shows that the parties had not gas in mind. That is certainly quite possible, and indeed highly probable.   It is urged that they did not intend to reserve anything which could not be obtained by mining or boring oil wells, as distinguished from those for natural gas.   Reliance is put upon the comparatively recent West Virginia case of Rock House Fork Land Co. v. Raleigh Brick & Tile Co., 83 W. Va. 20, 97 S. E. 684, in which it was said that the—

"term 'mineral' is not a definite one, capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it, and in determining its meaning regard must be had, not only to the language of the deed in which it occurs, but also to the relative position of the parties interested, and to the substance of the transaction which the deed embodies."

In conformity with the doctrine thus laid down it was held that a grant of coal and all other minerals, as well as of certain rights to be enjoyed in the production of such minerals, the rights being those ordinarily required in mining operations, should be restricted to such minerals as are ordinarily procured by mining, and that fire clay was not included among them.

In the case at bar it must be remembered that gas as well as oil can be obtained by boring wells, and, what is obviously of importance, the right of the owner of the surface to its beneficial use is no more interfered with by the production of gas than it would be by that of oil, if as much.   Under the settled law of West Virginia it would appear that the words of reservation used were in themselves adequate to cover natural gas, and the relation in which the parties stood at the time the deeds were made makes this conclusion all the more reasonable.   From the recitals in the grants it appears, as has already been stated, that the plaintiff's predecessors in title had instituted ejectment proceedings against the defendants or their grantors, and a compromise was reached by which the plaintiff's grantors conveyed to the defendants, or to those under whom they claim, the surface of the land of which they were

then in possession, reserving the minerals to themselves. In plain English the defendants were not to be ousted from their homes. They were to retain all they had in fact theretofore enjoyed, subject to such incidental interferences and no more as might subsequently result, if and when the plaintiff's grantors and those claiming under them should work the subsurface mineral deposits.

[2] The defendants, however, contend that in order to make clear the "relative position of the parties interested" at the time the deeds were made, they were entitled to show that up to that time natural gas had never been commercially produced in that portion of the state. There are authorities which either expressly or by necessary implication so hold. Detlor et al. v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266. But the inference which may be drawn from the facts sought to be established are too uncertain and even contradictory to make evidence of it helpful. Silver v. Bush, supra.

[3] One of the defendants claimed to hold 13½ acres of the land in controversy under a tax deed. This was one of the tracts which the plaintiff's predecessors in title had granted, reserving the mineral rights already referred to. The taxes for the nonpayment of which the sale was made were levied after the title to the surface and the minerals had been separated. Such estates may be separately assessed and if they are the sale of the one for non-payment of taxes does not necessarily carry title to the other. Elder v. Wood, 208 U. S. 226, 28 Sup. Ct. 263, 52 L. Ed. 464. When one person is the owner of the surface and another of the minerals under it, the Code of West Virginia 1913, c. 29, § 39 (sec. 923) makes it the duty of the assessor to divide the value of the land between the different owners and to list each separately. It is true that when it affirmatively appeared that all the value was assessed to the owner of the surface and no assessment was made against the owner of the minerals, a sale for the failure of the owner of the surface to pay his taxes will carry the mineral rights with it. Peterson v. Hall et al., 57 W. Va. 535, 50 S. E. 603. In this case there is no evidence as to whether the mineral rights were or were not separately valued and listed, and we have been referred to no case to support the contention of defendants that there is any presumption that the taxing authorities did not do what the law said they should. In this state of the proof the learned judge below was clearly right in directing a verdict for the plaintiff on this issue.

[4] Included in the conveyance below was a tract of some 4 acres claimed by the defendant, Minerva Adams, under a deed from her father Jackson McCloud. This deed was made two years before and the grantor in it admittedly had no paper title, but Mrs. Adams asserted and offered evidence to prove that he had held it in adversary possession for a length of time sufficient to bar plaintiff's rights. In rebuttal of this part of her case the plaintiff was allowed, over objection and exception, to prove a statement said to have been made by Mr. McCloud a few days before the trial, to the effect that he had never claimed the 4 acres in question. Whether she had made out a sufficient adverse title in McCloud was a question left to the jury, and they decided against her. It may well be that the admission of

what purported to have been her father's disclaimer had much to do in leading the jury to the conclusion at which they arrived. A statement of a grantor in disparagement of his title, if made before he parts with it, is admissible against his grantee; but the law is otherwise as to declarations subsequently made. Fry, Trustee, v. Feamster et al., 36 W. Va. 464, 15 S. E. 253.

It follows that so much of the judgment in favor of the plaintiff against the defendant Minerva Adams as affects the 4 acres in question must be reversed, and that in all other respects and against all the other defendants it should be affirmed.