# Richmond.

## Nash and Others v. Yellow Poplar Lumber Co. and Others.

### December 3, 1908.

### Absent, Cardwell, J.

1. Deeds—*Delivery—Case in Judgment*.—As to one of the appellants, the evidence in this cause shows that if the deed from his father under which he claims an interest in the land in controversy was ever delivered, he reconveyed any and all interest he had in the land to his father two years before the father conveyed the land to one under whom the appellee claims title, and that this latter deed was delivered to the father. The said appellant so testified three years after the date of his deed to his father, and his conduct after the date of that deed is consistent with his testimony, and inconsistent with his present claim to an interest in the land.

2. Witnesses—*Impeachment—Admissions—Former Testimony*.—If a party to a suit testifies that he acquired his interest in the land in controversy in the suit by a deed from his father, and that he reconveyed the interest to his father, but delivered the deed to a third person in escrow, and that the latter delivered the deed to the father without the performance of the condition on which it was delivered, a former deposition given by such party in a suit between third persons touching the same land, in which he stated that the deed to him from his father was never delivered, and so never became operative and that he executed the reconveyance for the purpose of setting at rest any question that might arise by reason of the existence of the deed to him from his father, is admissible in evidence as an admission against his interest, and also for the purpose of discrediting him as a witness.

3. Estoppel—*Conduct of Party—Case in Judgment*.—In 1869 a father conveyed his undivided half-interest in a boundary of land to his four children in consideration of love and affection. In a

suit to partition the land in 1886 a purchaser from one of the children claimed a fourth interest in the father's moiety. In that suit one of the sons who now claims a fourth interest in said moiety, and is one of the appellants in this cause, testified that the deed of 1869, under which he now claims, never became operative, that he took nothing under it, and that the interest which it purported to convey still belonged to his father. About two years thereafter the father sold and conveyed a moiety of the boundary to one under whom the appellees now claim. In 1906 the present suit for partition of said boundary was brought by the said son and his brother. The evidence shows that the said son was present aiding his father in making the sale above mentioned, that he saw one-half or more of the purchase money paid to his father without objection—without asserting title to or claiming interest in the land—and that the purchaser thereof did not know of the claim which he is asserting in this suit, and did not have any convenient means of acquiring such knowledge.

*Held:* Under this state of facts it is clear that the said son is not entitled to the relief sought.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*C. H. Smithdeal* and *S. M. B. Coulling,* for the appellants.

*Vicars & Peery, C. C. Burns* and *E. S. Finney,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This suit was instituted by the appellants, Fullen Nash and William Nash, for the partition of a tract of land containing 8,525 acres, known as the Nash and Hendrick's grant, in which they claimed they were the owners in fee of an one-eighth interest each.

Their right to have partition was denied by the appellees, the defendants in the trial court, upon the following grounds:

1st. That the conveyance by which the complainants claimed to derive title from their father, Samuel H. Nash, was never delivered, and, therefore, they acquired no rights under it and never had any interest in the land.

2nd. That if the deed ever was delivered, the defendants were *bona fide* purchasers for value without notice.

3rd. That they were estopped by their conduct from asserting title to the land claimed as against the defendants.

4th. That they had been guilty of laches in asserting their claim.

5th. That they had lost their title to the land, if they ever had title, by the adversary possession of the defendants; and

6th. That Fullen Nash, one of the appellants, had reconveyed any interest which he may have had in the land to his father prior to the latter's sale and conveyance to the parties under whom the defendants claim.

In the view we take of the case, it is unnecessary to consider any of the said grounds of defense except the third and sixth, which were sustained by the trial court.

The first question we shall consider is whether or not Fullen Nash had, prior to the institution of this suit, parted with all interest which he may have had at any time in the Nash and Hendricks grant. If he had, it will be unnecessary to consider the question of estoppel, so far as he is concerned.

It appears that on the 8th day of June, 1869, Samuel H. Nash signed and acknowledged a deed, by which he conveyed, if the deed was delivered, his entire interest, being one-half, in the Nash and Hendricks grant to four of his children, among whom were the appellants, in consideration of natural love and affection. On the 24th day of July, 1883, Fullen Nash signed and acknowledged a deed, by which, if delivered, he reconveyed, in consideration of love and affection the interest which he had acquired from his father by the deed of June 8,

1869. On the 5th day of May, 1888, Samuel H. Nash, the father, executed, acknowledged and delivered a deed to Simmons, Stratton and Gilliam, under whom the appellees claim, conveying or attempting to convey to them an undivided one-half interest in the Nash and Hendricks grant of 8,525 acres. Among the title papers delivered to his grantees was the deed of Fullen Nash to him of July 24, 1883.

When Fullen Nash testified in this case, he stated that the deed of July 24, 1883, which was filed as an exhibit with the answer of one of the defendants, was executed by him when he was contemplating going to the State of Missouri, and placed in the hands of Capt. H. H. Dickenson, clerk of the County Court of Russell county, as an escrow, to be delivered to the witness' father in the event the latter sold the Nash half of the Nash and Hendricks grant and the witness' share of the proceeds of the sale was sent to him by Capt. Dickenson; that as no sale was then made by his father, the conditions upon which the deed was to be delivered never happened, there never was a delivery of it, and his interest in the land did not, therefore, pass by it.

In the year 1886, there was pending in the Circuit Court for Russell county a suit under the style of *Hendricks and others* v. *Kernan and others,* in which it was sought, among other things, to have a partition of the Nash and Hendricks' grant. In that suit one Whitley Thomas filed his petition, claiming that he was the owner of an interest in that grant, purchased from Elizabeth Dye, a daughter of Samuel H. Nash, to whom it had been conveyed by her father by the said deed of June 8, 1869. In the controversy which grew out of the filing of that petition, Samuel H. Nash denied that the deed of June 8, 1869, had ever been delivered. His own deposition and the depositions of the appellants were taken by him in that case to prove that fact.

Fullen Nash testified, among other things, that although the deed of June 8, 1869, had never been delivered, his father, who wished to sell the Nash half of the Nash and Hendricks' grant,

thought that that deed might interfere with the sale which he wished to make, and asked the witness, who was thinking of going to the State of Missouri, to reconvey to his father the interest which that deed purported to pass to the witness, and that he did so. In that deposition Fullen Nash does not pretend that the deed was placed in the hands of Capt. Dickenson as an escrow, to be delivered in the event his father sold the land and sent him through Capt. Dickenson his share of the proceeds of sale; but it is clear from his testimony in that case that he did not claim that he took any interest in the land under the deed of June 8, 1869, because it had never been delivered, but that in order to obviate any difficulty which his father might have in selling the land on account of that deed, he had made the reconveyance of July 24, 1883.

Fullen Nash's depositions in that case and in this upon the execution and delivery of that conveyance are utterly irreconcilable. His conduct, subsequent to the execution of that deed and until shortly before the institution of this suit, more than twenty years afterwards, is in harmony with his first deposition, taken only three years after the deed of July 24, 1883, was executed—that he never had any interest in the land, and, if he had, he had parted with it by that deed.

By some means, whether properly or not, the deed of June 8, 1869, had been recorded in the clerk's office of the County Court of Buchanan county. The records of that office were partially destroyed by fire in the year 1882, and entirely destroyed by fire in the year 1885, yet Fullen Nash, who now claims an one-eighth in a tract of more than eight thousand acres of land, did not have a copy of that deed put on record in that office, as he had the right to do, until the year 1906; never paid any attention to the land, or exercised any acts of ownership over it, or paid any taxes thereon, at least after the date of the deed of July 24, 1883.

There is evidence tending strongly to prove that Fullen Nash was present aiding his father when the latter made sale of the

Nash half of the Nash and Hendricks' grant to the parties under whom the appellees claim.

The conduct of Fullen Nash, after the execution of the deed of July 24, 1883, until a short time before the institution of this suit, cannot be explained or accounted for upon any other theory, than that by that conveyance he intended to convey and did convey to his father any and all interest he may at that time have had in the land. When to this is added his sworn statement, made three years afterwards, that said deed was executed for that purpose, there can be no reasonable doubt that that deed was delivered to his father, and that he has no interest in the land sought to be partitioned.

It is claimed that his deposition, taken in the case of *Hendricks, &c.* v. *Kernan, &c.,* was not admissible evidence; but this contention is without merit. His statement in that deposition was an admission against his interest, and upon that ground was clearly admissible. It was also admissible for the purpose of discrediting him as a witness in this case, in which he had testified differently as to the delivery of the deed of July 24, 1883.

The remaining question to be considered is whether or not the appellant, William Nash, is estopped by his conduct from asserting title to the land in controversy. This defense the appellants insist cannot be relied on, because not put in issue by the pleadings.

While the allegations in the answers of the defendants, intended to raise this question, might have been more direct and specific, the facts alleged in the answers are sufficient and sufficiently pleaded to make out a case of estoppel, if satisfactorily proved.

Simmons, one of the vendees in the deed of May 5, 1888, testified positively that William Nash was present, participating in the negotiations, when that conveyance was made; that he did not claim any interest in the land conveyed, but on the contrary represented that his father's title to it was good, and

saw a large part, more than half, of the purchase price paid to his father.    Simmons further testified that he knew nothing about the deed of June 8, 1869.

Joseph Hibbits, the then clerk of the County Court of Buchanan county, a wholly disinterested witness so far as the record shows, testified positively that William Nash was present at that time and seemed to be assisting his father in the transaction.    It is true that William Nash testifies that he was not present on that occasion, and denies that he ever knew of the sale in question until a year or so before the institution of this suit.    This latter statement is incredible, and makes it difficult, if not impossible to give credit to his other statements when in conflict with the testimony of other witnesses.    His father with whom he lived died less than a year after the sale, leaving a will. William Nash was one of the devisees named in the will, and admits that he heard it read.  It disposes of the residue ($5,500) of the unpaid purchase price due from the parties to whom his father had sold the land.

His conduct proves that he knew of the sale long before he says he did.    It does not appear that after his father's sale and conveyance of the land, in the year 1888, until the deed of June 8, 1869, was re-recorded, in February, 1906, just before this suit was instituted, that he set up any claim to the land.    During that long period he paid no taxes upon it, exercised no acts of ownership over it, and in the year 1890, when the general agent of his father's vendees or their successors was sent to William Nash to get information about the land, he was told by that agent whom he represented; that he was going to the land to take charge of it for his principals, the owners thereof, and wished to get such information from him as he could give about the land; yet William Nash made no claim to the land nor gave any intimation that he had or claimed any interest in it; but gave the agent such information as he could.

That William Nash claimed no interest in the land at the

time his father sold it to the parties under whom the appellees claim is further shown by the fact that he testified in substance in the old case of *Hendricks* v. *Kernan,* hereinbefore referred to, that the deed of June 8, 1869, under which he now claims, never became operative; that he took nothing under it; and that the interest which it purported to convey still belonged to his father.   This sworn statement was made in the year 1886, only about two years before the sale to the parties under whom appellees claim.   During this period nothing is shown that could have changed his views as to his rights or interest in the land.

Without discussing further the evidence relied on by either side upon the question of estoppel, it is sufficient to say, that a careful consideration of the direct testimony, the facts and the circumstances disclosed by the record satisfies us that at the time his father conveyed the Nash moiety of the Nash and Hendricks tract of land to the parties under whom the appellees claim, William Nash was present aiding his father in making the sale; that he saw one-half or more of the purchase money paid to his father without objection—without asserting title to or claiming an interest in the land—and that the purchasers thereof did not know of the claim which he is asserting in this suit, and did not have any convenient means of acquiring such knowledge.   Upon this state of facts it is clear that William Nash is not entitled to the relief sought.

We are of opinion that the bill was properly dismissed as to both complainants (appellants here) by the circuit court, and that the decree appealed from must be affirmed.

*Affirmed.*