# CHARLESTON.

J. W. MOORE *et al.*, v. C. J. HENDERSON *et al.*

Submitted February 1, 1921. Decided February 15, 1921.

1. MINES AND MINERALS—*To Construe Reservation of Minerals Situation of Parties and Their Interpretation Must be Considered.*

In order to determine the true meaning, purpose and effect of a reservation in a deed, purporting to except or reserve the minerals underlying the tract conveyed, but rendered uncertain and ambiguous by the addition of a clause, "as reserved by the land company," it is necessary to construe the reservation in the light of the situation of the parties at the time the deed was executed, and in accordance with the interpretation and construction which they have placed upon it. (p. 702).

2. SAME—*In Suit to Cancel Deed as Cloud on Title to Minerals, Held That Reservation of Minerals Intended to Protect Grantor Against Unknown Prior Grantor Must Fail With False Premise on Which it Was Evidently Based.*

Where, in such a case, the record is replete with the testimony of many witnesses to the effect that the purpose of the grantor in excepting the minerals, as disclosed by numerous statements made by him to them, was not to retain the minerals for his own use, but merely to reserve or except them on behalf of an unknown prior grantor, a land company, that might have acquired title to them or excepted or conveyed them and thus deprived him of title thereto, creating danger of liability on his deed unless he excepted them from the conveyance, and that it was his intention to vest in his grantee title to the minerals and surface if no prior grantor had reserved or conveyed them, and all his subsequent acts with regard to the tract conveyed conform to and support this construction, and there is nothing in the record to show that any

land company, as predecessor in title, ever made such reservation or, indeed, ever existed, the attempt to reserve the minerals must fail with the false premise upon which it was based, especially when such holding will conform to the expressed intention of the grantor and to representations made by him to various purchasers. (p. 706).

3.    Same—*Fee Simple Title Held to Vest Regardless of a Reservation of Minerals.*

Where a deed for land designates the estate the grantee takes, as to himself and heirs forever, "reserving, however, from the operation of this deed all minerals, mineral interests, oils, natural gas, &c., with all right of way rights and privileges, as reserved by the land company," and, as the parties thereto and interested therein agree, there never was at any time such a company capable of holding or that held title to such minerals or an interest therein, by deed or otherwise, the deed first mentioned, when properly construed, vests a fee simple title to the land and minerals regardless of the reservation therein contained, when such was the expressed intention of the grantor as to its disposition in case there had been no prior exception or conveyance of the minerals to cause him embarrassment and possible liability on his deed, and purchasers believing and relying upon such representations purchase the minerals for a valuable consideration. (p. 707).

4.    Estoppel—*One Disclaiming Title on Inquiry of Purchaser May Not Assert Title Against Purchaser.*

If a person claiming an interest in land, based upon an ambiguous and indefinite clause in a deed, denies his title to or interest in it, in response to the inquiry of a prospective purchaser of such title or interest, and thereby knowingly misleads him into dealing with the estate as if he were not interested, such person generally will be postponed to the party misled and compelled to make his representation specifically good. (p. 707).

5.    Same—*Rule That Claimant of Interest Will be Postponed Through Misleading Prospective Purchaser Must be Carefully Applied.*

Such rule, however, being opposed to the letter and spirit of the statute of frauds, should be carefully and sparingly applied, and only upon the disclosure of clear and satisfactory grounds of justice and equity, such as fraud or other similar misconduct. (p. 708).

6. SAME—*Frauds, Statute of—Oral Disclaimer Not Sufficient to Divest or Pass Title; Claimant's Statements as to Understanding of Uncertain Clause in Deed May be Relied Upon by Good-Faith Purchaser.*

   Mere oral disclaimer, without more, generally is not sufficient to divest or pass title. But when the right disclaimed by a grantor is based upon an ambiguous and uncertain clause in a deed, statements by him as to his intention and understanding with regard to its meaning and purpose are entitled to peculiar weight and respect by a prospective purchaser, and constitute such constructive, if not actual, fraud as a court of equity will not sanction or tolerate as against such purchaser who in good faith acts upon the representations, believing them to be true. (p. 708).

7. ABATEMENT AND REVIVAL—*Possessor Under Superior Title May Cancel Cloud Despite Pendency of Ejectment Action.*

   One in actual possession of land under superior title may, in equity, maintain a suit to cancel a deed as an alleged cloud upon his title, despite the pendency of an action of ejectment instituted by the adversary party. (p. 708).

Appeal from Circuit Court, Lincoln County.

Suit by J. W. Moore and others against C. J. Henderson and others. Decree for plaintiffs, and defendant named appeals.

*Affirmed.*

*Jacob D. Smith, Pendleton L. Williams* and *Wilkinson & Wilkinson,* for appellant.

*Simms & Staker,* and *E. E. Young,* for appellees.

LYNCH, JUDGE:

The two-fold purpose sought to be consummated by the plaintiffs in this suit, and granted by the decree reviewed for error, is the cancellation of a deed dated June 4, 1917, made by B. F. McGhee and wife, Mildred C., to C. J. Henderson, the husband of their daughter, conveying to him all their right, title and interest in and to the minerals underlying a tract of 115 acres of land in Lincoln County, as a cloud upon the titles of the plaintiff Moore, under a deed of September 27, 1900, by the same grantors for the surface of the same tract and the minerals under it, according to his construction of that instrument, and of plaintiff Young, under a deed of Moore and wife for an undivided one-half interest in the minerals,

bearing the date of December 11, 1916; and an injunction to inhibit McGhee and Henderson from interfering with the possession of the plaintiffs Moore and Young under the grants to them, and the prosecution of oil and gas developments on the land by the Sovereign Gas Company under a lease executed to it by Moore and Young, December, 1916.

The stability of the decree depends upon the proper construction of what on its face purports to be a reservation of the minerals in the deed of conveyance from McGhee and wife to Moore. It grants unto him the 115 acres, "to have and to hold" the land unto himself and his heirs forever, "reserving, however, from the operation of this deed all minerals, mineral interest, oils, natural gas, &c., with all right of way rights and privileges, as reserved by the land company." The validity and effect of this clause of the reddendum, in connection with the other facts and circumstances involved in the controversy, is the fundamental issue between the parties. Plaintiffs insist that the deed, considered in the light of the circumstances surrounding the parties at the time of its execution and the interpretation then and since placed upon it by them, resort to which is rendered necessary in order properly to understand the ambiguous clause purporting to reserve the minerals, in effect vested in Moore the minerals as well as the surface of the tract, thereby giving to him and the other plaintiffs in privity with him the right to prosecute their search for oil and gas and full right to appropriate them to their exclusive use and benefit, when produced. Defendants as urgently insist that the title to the minerals remained in B. F. McGhee by virtue of the reddendum, and vested in Henderson after the McGhee deed to him.

Apparently the words, "as reserved by the land company," are to be interpreted and construed in connection with all that precedes in that clause, thereby rendering vague and ambiguous the exact nature and effect of the mineral rights reserved as well as the privileges and rights of way. The phrase necessarily implies a prior ownership of the title to the entire 115-acre tract or some part of it, and that the owner was a land corporation or partnership.

On the theory of a severance of the surface and minerals underlying the tract, effected by the McGhee deed to Moore, and that the failure of the grantors to list the minerals for taxation and cause them to be assessed with taxes operated to forfeit the minerals in favor of the state, a suit was instituted in Lincoln County by the commissioner of school lands to obtain authority to sell them. In that suit the Huntington Development & Gas Company filed an answer to the bill and therein claimed to be the owner of the minerals underlying each of the two parcels comprising the 115 acres. Whether or not the question of ownership was determined in the proceeding does not appear, the record not being produced. But for some reason not disclosed the suit was dismissed, probably on the theory that payment of taxes by Moore during the 18 years of his ownership prevented a forfeiture and enured to the benefit of the owner of the minerals, or it may be that the court held invalid and unfounded the claim asserted by the Huntington Development & Gas Company, or both. However that may be, it abandoned and has not in this suit reasserted the claim of title so relied on, if any it had. Nor is there any intimation or suggestion of the identity or existence of any other land company, which under any condition or circumstance is entitled to take and hold the minerals under the provision in question. No such person, firm or corporation trading as a land company appears in the chain of title to any part of or interest in the subject matter of that clause in the deed, as counsel admit— nothing whatever tending in the least degree to establish an outstanding ownership of the minerals or to identify the owner whose rights were intended to be secured by the reservation or exception. With this admission, after diligent search of the public records of the county in order to ascertain the intended beneficiary, it is not unreasonable to assume its nonexistence.

Unless the language used in the deed is broad enough to include the grantor, there is no person, firm or corporation competent to assert and vindicate a right to the minerals except Moore and his grantee, Young, and their lessee, Sovereign Gas Company, in view of the failure to discover any corporate or partnership entity corresponding with the designation, "land

company." Furthermore, the so-called reservation clause is vague and uncertain in another respect, namely, with regard to the nature of the rights of way and privileges sought to be provided for. It likens them to those reserved by the land company, but as we have seen before, there is nothing in the record to show that any land company, as predecessor in title, ever made such reservation or exception, or that the company ever existed.

Because of this double ambiguity and uncertainty, it is necessary to construe the clause in the light of the situation of the parties at the time the deed was executed, and in accordance with the interpretation which they have placed upon it. *Gibney* v. *Fitzsimmons,* 45 W. Va. 334; *King* v. *King,* 80 W. Va. 371, 382; *Butler* v. *Carlyle,* 84 W. Va. 752, 100 S. E. 736. And in so doing it is unnecessary to discuss the technical differences existing at the common law between a reservation and exception, or determine into which class the clause in question most readily falls, other than to refer to *Freudenberger Oil Co.* v. *Simmons,* 75 W. Va. 337.

The record is replete with the testimony of many witnesses to the effect that McGhee's purpose in making the reservation or exception, as disclosed by numerous statements made by him to them, was not primarily to retain the minerals for his own use, but to hold them on behalf of another, in order to protect himself from liability on his deed, fearing that some one of his predecessors in title had made a similar reservation or had conveyed or transferred the minerals under the tract in such a way as to subject him to the danger of a recovery of damages at the suit of some injured plaintiff into whose hands title to the property had vested or might vest. His expressed intention and purpose was to obtain protection for himself by excepting the minerals for the benefit of an indefinite land company, a possible remote grantor, who, he believed and feared, had already excepted them. In other words, he entertained some doubt whether he had good title to the minerals, and hence, in order to be safe, decided to eliminate them from the grant of the tract. Of course McGhee denies that any such motives prompted the insistance upon the course adopted. But the

clear preponderance of the testimony with regard to his own admissions on numerous occasions is that it was his intention and wish that Moore should have both the surface and the minerals, if no prior grantor had reserved them or conveyed them away. Indeed, he practically admits that such was his purpose when he says: "I reserved it (the minerals) for myself. I didn't know but that something might come around that was older, and took it, and I reserved it for myself." The "something" that he feared was a prior reservation or conveyance of the minerals, rumors of which may have reached him.

. His subsequent acts bear out this construction. For 18 years he made no attempt to cause the minerals to be assessed for taxation in his name on the land books of the county. Indeed, his grantee Moore regularly paid the taxes every year on the entire tract, this payment presumptively including the minerals as well as the surface, and for the years 1917 and 1918 the former were assessed separately in the names of Moore and Young as joint owners. He set up no claim or title to the minerals or any other interest in the land for more than 18 years after the deed to Moore, but when discussing the subject with and in the presence of his neighbors, friends and associates, and Moore and Young, repeatedly disavowed holding or having an intention to withhold, withdraw, reserve or except from the estate vested in Moore any right, title or interest whatsoever in the land so conveyed, which had not been withdrawn by his prior grantors, and if in fact nothing had been excepted or reserved by them, then Moore was to have all. This purpose he uniformly expressed, not to one or two, but to numerous persons possessing knowledge or information or in a friendly manner seeking to elicit from him an explanation of the motive or reason prompting the insertion of the clause whose meaning, interpretation and construction is to be ascertained in this suit. With uniformity and persistency, indeed, with apparent frankness, he disavowed and disclaimed an intention, object or purpose to withhold or withdraw as against Moore any part of the estate vested by the granting clause; but affirmed and reaffirmed Moore's unquestionable right to the estate in the land,

including minerals and mineral rights of way and privileges, save and except upon the one contingency that they had already been reserved by the company answering the description in the reddendum of the Moore deed. Before the Sovereign Gas Company, lessee of Moore and Young, commenced the drilling which resulted in discovery of a valuable gas field underlying the tract, it sought to ascertain from McGhee his interpretation of or attitude upon the clause in question, and was assured that they had nothing to fear from him, since the minerals were vested in Moore except upon the contingency noted. Indeed, it was not until discovery of the value of the mineral deposits beneath the tract, eighteen years after his deed to Moore, that McGhee made any claim to them. As a matter of fact, no prior reservation or exception appears to have been made by any of McGhee's predecessors in title, immediate or remote. Hence, construing the clause in the reddendum in the light of the circumstances existing at the time of the execution of the deed, and with due regard to the construction and interpretation placed upon it by the parties themselves, as we must do because of the ambiguity and apparent incompleteness of the reservation or exception which it purports to impose, the clause must necessarily fall with the false premise upon which it evidently was based, especially where such a holding will conform to the clearly expressed intention of the grantor, as disclosed by statements and admissions made by him in the presence of numerous witnesses.

The case of *Deer Creek Lumber Co.* v. *Sheets,* 75 W. Va. 21, is peculiarly appropriate and applicable in this connection. E conveyed to S a tract of land on which A held a right to cut and remove the timber within a period of five years, which period had not then expired. The deed conveying the land to S recited: "The timber upon this tract of land was sold to A by E, and is therefore reserved by the party of the first part in this deed." A failed to cut and remove the timber within the time allotted, and upon its expiration the question arose whether such timber passed to S under the deed, or was reserved to E by the clause quoted. The court held that "only the right of A to cut and remove the timber within the five years was reserved or excepted,

not a right of reversion to E in case the timber was not cut and removed * * * within the time; and the right of reversion upon A's failure to cut and remove passed by the conveyance to S."

In that case, as here, the court found that the primary purpose prompting incorporation of the exception in the deed was to protect the grantor against liability thereon. "The grantors * * * most evidently, by the language they used, meant to protect themselves against their general warranty as to the Arbogast right. They say the timber is reserved. Why? Simply because it had been sold to Arbogast; because presumably he will take it. * * * Do the words mean more than that the estate held by Arbogast is not granted—is not interfered with by the conveyance? We think they do not. For they * * * virtually say that the reservation is made simply because Arbogast owned the thing reserved, that is, in his behalf. The words do not indicate that the reservation or exception is made because the grantors claim an interest in the timber. * * * But plaintiffs say that the timber was reserved *by* the grantors and therefore did not pass to Sheets. As we view the language used, it was reserved *by* the grantors on behalf of Arbogast, but was not reserved *unto* the grantors themselves."

In the case now before us, the warranty, it is true, is special, not general, but the same instinct of self preservation that induced the grantor in the case cited to insert the clause he used seems to have led McGhee to do the same thing. In the case cited, the purpose prompting the insertion of the clause was arrived at by construction; while here the same purpose is practically admitted by the grantor, as established by the great preponderance of the testimony adduced to show the circumstances surrounding the parties at the time of the execution of the deed and the construction which they themselves have placed upon it. Hence, the purpose failing, and there being no further need for protection, the minerals pass to the grantee in the deed, since that was the frequently expressed intent of McGhee in case there had been no prior exception of them to cause him embarrassment and possible liability on his deed.

Moreover, in view of the doubt and uncertainty as to the purpose and object of the clause, necessarily inhering in it by its

very terms, coupled with the disavowals and disclaimers of McGhee and their effect as inducements for the purchase of the interest in the minerals by Young and a lease by Sovereign Gas Company for the production of oil and gas, a court of equity will not now, under the circumstances established by the proof, permit McGhee or his grantee Henderson to assert a title to the minerals adverse to the plaintiffs. When interrogated by representatives of the gas company prior to its purchase of the lease, McGhee assured them that he had retained no interest under the clause, but that title thereto was in Moore. In reliance upon that statement and representation, the company took the lease and immediately instituted developments on the land, resulting in discovery of valuable gas deposits underlying it. Having induced such action by their conduct, can defendants now insist that title to the minerals is in them?

In 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 807, the author states as follows the rule applicable to an estoppel affecting the legal title to land: "The general rule is, that if a person interested in an estate knowingly misleads another into dealing with the estate as if he were not interested, he will be postponed to the party misled, and compelled to make his representation specifically good. It applies to one who denies his own title or encumbrance, when inquired of by another who is about to purchase the land or to loan money upon its security. * * * This equity, being merely an instance of fraud, requires intentional deceit, or at least that gross negligence which is evidence of an intent to deceive. * * * While the owner of land may by his acts *in pais* preclude himself from asserting his legal title, 'it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles if they were allowed to be affected by parol evidence of light or doubtful character.' The most important 'ground of justice and equity' admitted by courts of equity to uplift and displace the statute of frauds concerning legal titl to land, by fastening a liability upon the wrongdoer, is fraud. There are many instances in which equity thus com-

pels the owner of land to forego the benefits of his legal title and to admit the equitable claims of another, in direct contravention of the literal requirements of the statute, but they all depend upon the same principle." See also *Atkinson* v. *Plum,* 50 W. Va. 104; *Mullins* v. *Shrewsbury,* 60 W. Va. 694; *C. & O. Ry. Co.* v. *Walker,* 100 Va. 69; *Nash* v. *Yellow Poplar Lumber Co.,* 109 Va. 14; 21 C. J. title, "Estoppel," § 153.

If the clause in question had been unambiguous, and had in fact reserved title in the minerals to McGhee, his subsequent admissions that title was not in him, but in his grantee Moore, might not hove divested him of his lawful property rights, since Young and Sovereign Gas Company both knew of the existence of the clause and were acquainted with its provisions. Under such circumstances it would be difficult to find fraud, in view of the fact that the plaintiffs were fully cognizant of the terms of the purported reservation. Mere oral disclaimer of title, wihout more, is not sufficient to pass title. *High's Heirs* **v.** *Pancake,* 42 W. Va. 602; *Yock* v. *Mann,* 57 W. Va. 187; *Wade* v. *McDougle,* 59 W. Va. 113; *Crawford* v. *Workman,* 64 W. Va. 19; *Clark* v. *Beard,* 69 W. Va. 313. But we do not now decide that question. Here, however, the clause is ambiguous and uncertain, and plantiffs' knowledge of its provisions does not alone fully inform them of its effect. Because of that fact, the statements of McGhee as to his intention and understanding with regard to its meaning are entitled to peculiar weight and respect by a prospective purchaser, and in our opinion constitute, if not actual, at least suc constructive fraud as to estop him from now asserting a contrary claim to the injury and detriment of those who, in reliance upon his construction of the clause, have been induced to expend a large sum of money.

Such was the state of McGhee's interest in and to the minerals underlying the 115 acres which he conveyed to Moore in 1900. The rights of Henderson under his deed of 1917 can be of no higher dignity, for that instrument conveyed to him only such right, title and interest as his grantor possessed. As to what his rights would or might have been, had he received a general warranty deed, we express no opinion. But under the facts dis-

closed by this record, his rights are of no greater dignity than those of McGhee.

There can be no doubt of plaintiffs' right to maintain this suit to cancel the deed of 1917 to Henderson as a cloud upon their title, despite the fact that there is pending an action of ejectment to determine the same question. *Whitehouse* v. *Jones,* 60 W. Va. 680; *Gilbert* v. *McCreary,* 87 W. Va. 56, 104 S. E. 273.

For these reasons, our order will affirm the decree.

*Affirmed.*