# CHARLESTON.

### ROCK HOUSE FORK LAND COMPANY v. RALEIGH BRICK AND TILE COMPANY.

Submitted October 8, 1918.   Decided October 29, 1918.

1. MINES AND MINERALS—*"Mineral."*

   The term mineral is not a definite one capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it, and in determining its meaning regard must be had, not only to the language of the deed in which it occurs, but also to the relative position of the parties interested, and to the substance of the transaction which the deed embodies.   (*p.* 22).

2. SAME—*Conveyance of Coal and Minerals—Extent—Construction of Deed.*

   Where a deed grants the coal and all other minerals in a tract of land, as well as certain rights to be enjoyed by the grantee in the production of such minerals, and the rights so granted are of the character which are necessary to be enjoyed, and which are ordinarily enjoyed, in the production of minerals from mines, that is, by the process of shafting and tunneling therefor, and there is nothing else showing just what substances the parties intended to include by the language of the grant, the intention of the parties as to the extent of the minerals' granted may be determined from the language of the mining rights granted as incident thereto, and such grant limited to such minerals as are ordinarily produced by the exercise of such mining rights as are granted by the deed.   (p. 24).

Appeal from Circuit Court, Raleigh County.

Suit for injunction by the Rock House Fork Land Company against the Raleigh Brick & Tile Company. Decree for defendant, and plaintiff appeals.          *Affirmed.*

*McGinnis & Hatcher,* for appellant.

*J. E. Summerfield* and *Bumgardner & Preston,* for appellee.

RITZ, JUDGE:

On the 6th day of August, 1902, O. P. Riffe, being the owner of a tract of land in Raleigh county, conveyed to the

plaintiff ''all the coal and other minerals of every kind and description except gas and oil in and underlying said land.'' The deed also contained the grant of certain mining rights in this language: ''together with the privileges to use so much of the stone and water in and upon the aforesaid land as may be necessary or desirable for the convenient operation of a coal mining or mineral plant, also including the right to enter upon said land and to *mine, excavate* and remove all the coal and to make and maintain all necessary railroads, excavations ways, shafts, drains, drain-ways and openings necessary and convenient for the *mining* and removal of said coal and other minerals also the right to haul and transport under through and over said land the coal and other minerals from adjacent, coterminous and neighboring land without being liable for any damages or injury done to the surface or to any water course in or upon the said property and these rights and privileges shall run with the coal and minerals.'' Subsequently the defendant became the owner of a part of this tract of land, subject to the above grant of the minerals. It seems that the purpose of the defendant in purchasing the land was to manufacture brick from brick clay thereon. After its purchase it installed a brick manufacturing plant and, as alleged in the bill, began the manufacture of brick and the sale thereof. The plaintiff avers that the land is underlaid with a seam of clay valuable for the purpose of manufacturing brick and other like materials, and that the said seam of clay is not a part of the soil of said tract of land used for agricultural purposes. Its contention is that the grant to it of the coal and other minerals except oil and gas passed this seam of clay. It is averred that the defendant is removing this clay and is making brick therefrom, and the purpose of the suit is to enjoin its removal by the defendant. The answer of the defendant does not put in issue any of the allegations of the bill, but only exhibits its title to the tract of land upon which its operations are being conducted, and which land was conveyed to it subject to the grant theretofore made to the plaintiff. No evidence is taken by either of the parties, and the duty devolves upon us of construing the grant without the aid of

anything except the paper itself. It must be borne in mind in construing this paper that the purpose of all construction is to give effect to the intention of the parties. Where language of certain import is used it will be presumed that the parties intended the language to have its ordinary and accepted meaning, unless there is a clear expression of intent that the language was used in a different sense.

What is meant in a grant like this by the term minerals has been many times the subject of discussion by the courts of this country, as well as the courts of England. It would seem that this word has no definite and certain meaning which can be attributed to it in all cases. Its strict scientific definition would include all inorganic matter, but it cannot be said that in granting the minerals in a tract of land the term is used in any such broad comprehensive sense, for if such were the case a grant of the minerals would be a grant of the entire estate.

Originally it seems to have been held in England that the term mineral would include anything that was produced from mines or by the ordinary process of mining, that is, by excavation by means of shafts or tunnels. This definition was adhered to by the English courts for many years, but when the question of whether or not a bed of clay operated by open workings, and not by the ordinary processes of mining, was a mineral, it was held to be such. It was held that the term mineral means primarily all substances other than the agricultural surface of the ground which may be got for manufacturing or mercantile purposes, whether from mines, as the word would seem to signify, or such as stone or clay, which are got by open workings. *Midland Ry. Co.* v. *Checkley,* Law Rep. 4 Eq., 19; *Hext* v. *Gill,* Law Rep., 7 Chan. App. Cases, 699; *Midland Ry. Co.* v. *Haunchwood Brick & Tile Co.,* Law Rep., 20 Chan. Div., 552; *Magistrates etc.* v. *Farie,* Law Rep., 13 App. Cases, 657; *Great Western Ry. Co.* v. *Carpalla United China Clay Co.,* Appeal Cases 1910, p. 83. The question has been discussed by some of the American courts, and we believe there is a reasonable degree of unanimity as to the meaning of the term, although there are some apparent discrepancies in the application of it to par-

ticular substances. In the case of *Hendler* v. *Lehigh Valley R. R. Co.,* 209 Pa. St. 256, 103 Am. St. Rep., 1005, 58 Atl., 486, the Pennsylvania Supreme Court had under consideration the question of whether sand was a mineral and included within the terms of such a grant. The conclusion reached by that court was that this term in its commercial sense may be defined as any inorganic substance found in nature having sufficient value separate from its situs as part of the earth to be mined, quarried or dug for its own sake, or its own specific use. The Supreme Court of Tennessee. in the case of *Murray* v. *Allard,* 100 Tenn., 100, 39 L. R. A. 249, had under consideration the question of whether or not petroleum oil and gas were included within the term mineral. It was held that these substances were minerals, and in the discussion the conclusion reached by the Pennsylvania Court above referred to was apparently approved. So in the case of *Armstrong* v. *Lake Champlain Granite Company,* 147 N. Y. 495, the Court of Appeals of New York had under consideration the question of whether granite was included within a grant of minerals, and after an elaborate review of the authorities comes to a similar conclusion with that reached by the Pennsylvania court in the case above referred to, when there is no aid in construing the term from the circumstances surrounding the parties at the time, or from the paper itself. So in the case of *Brady* v. *Smith,* 181 N. Y. 178, 2 Ann. Cases 636, the question was again under discussion by the Court of Appeals of New York, and the conclusion reached that limestone was not included in the grant, for the reason that it could be determined from the language used that the parties only intended such minerals as were secured by the ordinary processes of mining. Numerous holdings in particular cases might be found to the effect that stone used for road making and paving, limestone, flint stone, slate, clay and other like materials are minerals, but it will be apparent from a reading of the cases that much stress is laid upon the language used by the parties in the grant, not only that language which describes the substance of the grant, but as well any other language used which would throw light on what the parties intended when they used such

a term as mineral or mines. Frequently the character of the mining rights granted has been held to determine the limit of the substance granted, as in the two New York cases above cited. It would seem that the terms mine and mineral are not definite terms. They are susceptible of limitation according to the intention with which the parties use them, and in their construction regard must be had, not only to the deed in which they occur, but also to the relative position of the parties interested, and to the substance of the transaction or arrangement which the grant embodies. Consequently in themselves these terms are incapable of a definition which would be universally applicable. Lindley on Mines and Mining, § 87 etc., where the question is elaborately discussed; 18 R. C. L., p. 1093; *Sult* v. *A. Hochstetter Oil Co.*, 63 W. Va. 317-323. It would not do to say that the term includes only such substances as are procured by tunnelling and shafting, for it is well known that much gold was procured by the process of placer mining, and surely no one would contend that the term mineral did not include gold, whether found upon the surface, in the bed of a stream, or as the result of shafting and tunnelling for the ore. It is also well known that rich deposits of manganese and other like ores are found upon the surface of the earth, and are sometimes secured without either quarrying or mining, and it could not be contended that such ores when so found are not minerals, but when secured by the process of tunnelling and shafting, or other similar mining processes are minerals.

In this case we have no evidence as to the situation of the parties at the time of the grant, or their conduct under it, which would aid us in the interpretation of it. We have, however, language used in the deed conveying certain mining rights. The grant of these rights is to mine, excavate and remove all the coal; make and maintain all necessary railroads, excavations, ways, shafts, drains, drainways and openings necessary and convenient for the mining and removeal of said coal and other minerals. Substantial aid is afforded by this language in determining what the parties meant by the term, other minerals, in the grant. The rights granted for the removal of these minerals are such rights as are in-

cident to the production of minerals by means of mines, that is by shafting or tunnelling. It would seem quite clear that it was within the contemplation of the parties that the minerals granted were such as it was necessary to mine for, that is, either to tunnel for or produce by sinking shafts and tunnels therefrom. These rights granted would not be incident to their production in other ways, and so we think, as was held by the Court of Appeals of New York in the cases above referred to, that the meaning of the words used in the grant, when construed in the light of this language used in granting the mining rights, are limited to such minerals as are secured by the ordinary processes of mining. The bill in this case avers that this seam of clay is valuable for manufacturing brick and for other manufacturing and mercantile purposes, and is separate from and not a part of the soil on said tract used for agricultural purposes. This language is not equivalent to saying that it is secured by the process ordinarily termed that of mining. It says that the clay is separate from that part of the soil used for agricultural purposes, but it does not undertake to aver, nor is it anywhere shown in the case that this mineral is produced by tunnelling therefor, or by shafting therefor, or just in what manner it is produced. We cannot see from the pleadings in this case, and the pleadings are all we have, that the plaintiff has made a case which brings this seam of clay within the terms of its grant.

Such being the case, we are of opinion to affirm the decree complained of.

*Affirmed.*