# CHARLESTON.

MICHAEL G. MURPHY v. MORTON VANVOORHIS et als.

Submitted September 18, 1923.    Decided September 25, 1923.

MINES AND MINERALS—*Reservation of Oil Privileges and Right to "Minerals" or Petroleum Held Not to Reserve Title to Natural Gas.*

A reservation in a deed for land under general warranty, in which the "grantors do retain all of the oil *privilages* that is ever found on the said land with the rights of access to and from said land for said oil purposes including the leases under him to bore and mine on said land for minerals or *petrolim* oil with proper machinery and houses and hands on same for said oil purposes with the right to remove the same when he or they shall see *propper* the said grantors do grant with general warranty unto the said grantee all and singular a certain tract of land in the county of Monongalia and State of West Virginia subject to the *afoursaid* reservations and the said grantee is to have peaceable possession of said land on the first day of *Aprile* 1865 this reservation gives no right to the surface of the land *onely* for the *afforesaid boreing* and *mineing* and proper *meshinery* houses and hands and the right to and from said land for oil purposes", properly construed, does not reserve in the grantor title to the natural gas in the land; the word "minerals" as used therein cannot be construed to include natural gas.

Case Certified from Circuit Court, Monongalia County.

Suit by Michael G. Murphy against Morton Vanvoorhis and others. A demurrer to the bill was overruled, and the questions arising thereunder certified for review.

*Reversed.*

*Lazzelle & Glasscock,* for plaintiff.

*Terence D. Stewart* and *Glasscock & Glasscock,* for defendants.

LIVELY, JUDGE:

Murphy's bill is for the purpose of cancelling, as a cloud upon his title, a gas lease executed by defendant Estella V.

Davis to defendant Vanvoorhis on a tract of 127 acres of land in Cass district, Monongalia county, West Virginia. The demurrer to the bill was overruled, and the questions arising thereunder are certified to this court for review.

Plaintiff Murphy claims that he is the owner of the oil and gas in and under the land in question, by virtue of a reservation of the same in a deed made by Stephen Merrill to William L. Connaway on the 18th day of February, 1865. The property right reserved in that deed was later, on March 28, 1901, conveyed by Stephen Merrill to Mary M. Garlow, who, on June 8th of that year, conveyed the same to plaintiff. As before stated, the land was conveyed by Stephen Merrill in 1865 to W. L. Connaway (in which the reservation which is the subject of this controversy is found) and later was inherited by Estella V. Davis, and now belongs to her. On November 17, 1919, she executed a gas lease on the property, which lease is sought to be cancelled and removed as a cloud on Murphy's title to the gas. The whole controversy is involved in a proper construction of the reservation contained in the Stephen Merrill deed of 1865. Plaintiff claims that he is entitled to the gas in the land by reason of that reservation; whereas, defendant Estella V. Davis claims that the gas belongs to her and was conveyed to her father by said Stephen Merrill deed.

Immediately after the parties to the deed are named, and the consideration therefor and how secured is set out, the deed in question states, "and further the said grantors do retain all of the oil *privilages* that is ever found on the said land with the rights of access to and from said land for said oil purposes including the leases under him to bore and mine on said land for minerals or *petrolim* oil with proper machinery and houses and hands on same for said oil purposes with the right to remove the same when he or they shall see *propper* the said grantors do grant with general warranty unto the said grantee all and singular a certain tract of land in the county of Monongalia and State of West Virginia subject to the *afoursaid* reservations and the said grantee is to have peaceable possession of said land on the first day of *Aprile* 1865 this reservation gives no right to the surface of the land *onely* for the *afoursaid boreing* and *mineing* and

proper *meshinery* houses and hands and the right to and from said land for oil purposes bounded as follows viz Beginning at a black haw'' (here follows a description of the land by metes and bounds followed by a covenant that the grantors have the right to convey the land to the grantee).

The court is called upon to construe this deed and reservation, without any aid, the deed itself only being before us. The bill contains no averment that the parties have performed any acts thereunder which would aid in the construction; and the rights of the parties are submitted for adjudication upon the deed itself.

The cardinal rules of interpretation of deeds are well settled and apply here. The controlling factor in the interpretation of deeds, wills and contracts is the intention of the parties; and to arrive at that intention the whole instrument must be carefully scanned. . It is apparent that Merrill had in his mind a reservation of the oil in the land and he was careful to accentuate that idea by reserving the right to enter upon the land for the purpose of removing it. He expressly says that the reservation should give no right to the surface of the land only for the boring and mining and proper machinery and houses and hands and the right to and from the land for oil purposes. The terms ''oil privileges,'' ''oil purposes,'' ''petrol*im* oil,'' ''for said oil purposes'' and ''for oil purposes'' are found in the reservation. But the reservation includes the leases under him (the grantor) to bore and mine said land for minerals or ''petrol*im* oil,'' and it is only by the use of the word ''minerals'' that any doubt can be thrown upon the intent of the grantor as to what he reserved. It is in the use of this word ''minerals'' that plaintiff contends that the gas as well as the oil was reserved. What is the proper meaning or significance that should be given to the word ''minerals'' as here used? The meaning of the word has often been the subject of judicial inquiry in the English speaking courts. Its scientific meaning would include all inorganic matter in the land, and if it should be given this meaning it would include practically all that was in the land except the surface, and under such a meaning the deed in question would simply be a deed to the surface, and the reservation would include oil, gas, coal, silver, gold, clays, manganese or any other inorganic mat-

ter therein found. It is apparent that this scientific meaning cannot be imported to the words as used in this deed. If it was intended to reserve all of the minerals in the land then there would be no use of making a reservation of the oil. It is apparent from the discussion of the courts where the term has been used in grants of this character, and they are legion, that no certain definite meaning can be attributed to its use in all cases. An interesting discussion of the use of the term is found in our case of *Rockhouse Fork Land Co.* v. *Brick and Tile Co.*, 83 W. Va. 20, and the principle announced in that case is applicable here. The deed in that case conveyed to the Rockhouse Fork Land Company ''all the coal and other *minerals* of every kind and description except gas and oil in and underlying said land,'' together with the usual mining privileges for the removal of said coal and other minerals and also the right to haul and transport under, through and over the land the coal and other minerals from adjacent land without being liable for damage or for any damage or injury done to the surface or any water course; that those rights and privileges should run with the coal and minerals. Afterwards, the brick and tile company became the owner of a portion of the land subject to the grant of the minerals to the Rockhouse company, and began mining a seam of clay, valuable for manufacturing brick and other clay products. The Rockhouse company sought to enjoin the brick and tile company from taking the valuable clays, claiming that it had title to all of the minerals in the land, which included the valuable deposit of clay. This court held that the word ''minerals'' as used in the grant from Riffe did not include the seam of clay, dissolved the injunction and dismissed the bill. In aid of the construction it was observed that the provision for mining rights was evidently for the purpose of mining and removing the coal; and that clays were not, therefore, included within the term ''minerals'' as there used. And so in the reservation before us, it is apparent that the reservation for mining rights is for oil purposes and the right of ingress and egress and of placing machinery on the lands for oil purposes. The reservation expressly so states. It may be observed for what it is worth, that about the time of the execution of the deed in question there was considerable excitement in this country over a find

of oil in the state of Ohio. A Mr. George H. Bissell had conceived the idea of extracting crude petroleum by means of "artesian wells," and had formed the pioneer oil company which began operations near Titusville in 1859. After many business tribulations oil was reached at a shallow depth by crude methods, and in August of that year the well commenced producing at the rate of about 25 barrels a day. Like all other extraordinary events, the news of this find permeated the country, creating excitement, and other companies were rapidly formed. It may be observed further that while there had been very early discoveries of natural gas in this country, it was not considered of any general commercial value until after the Civil War. A gas well in Knox county, Ohio, drilled in 1866, was open for several years, and the gas allowed to escape, before it was put to any use. During the time of its escape it was set on fire and threw a flame fifteen or twenty feet into the air, and was quite a curiosity in those days. Whether Merrill knew of the oil excitement (Monongalia county not being very far from Titusville), and the value of oil, and the status of gas as to value, is a speculation. It is reasonably certain that natural gas was considered of little value, if any, at that time. But as before observed we have nothing before us on which to base an interpretation of this reservation except the deed itself.

In *Horse Creek L. & M. Co.* v. *Midkiff*, 81 W. Va. 616, we held that the term "minerals" as used in a reservation in a deed did not include petroleum oil and natural gas. The reservation was in the habendum clause, which was as follows: "To have and to hold with all the appurtenances thereto belonging excepting and reserving all the minerals, coals, together with all the necessary rights of way of ingress and egress to and from over through or under said premises to mine, excavate and transport the same excepting a sufficiency of said coals for domestic use." It was said that the term "coal" was used to qualify the term "minerals" just preceding it in the sentence and was used to designate a single object. It was apparent that the intention of the grantor Midkiff was to reserve only the coal, although he used the word "minerals," which, in its broad sense, would have included oil, gas, coal or any other inorganic matter. It was ob-

served in that case that the grant was of the land, and under section 8 of chap. 71 of the Code the effect of the deed was to pass all of the estate of the grantor except that contained in the reservation; and if there was any doubt as to whether the reservation of the minerals included the oil and gas then that doubt should be construed in favor of the grantee under the familiar rule that when there is doubt respecting the construction of a deed its language should be construed most strongly against the grantor. And so here. Is there not a very substantial doubt that Merrill intended to include anything else in his reservation except the petroleum oil and the right to exploit the land therefor? If it was intended to reserve the gas, coal, clays, manganese, or any other mineral of like kind or character, would it not be incumbent upon the grantor to so state? Can we write these other words into the reservation? *Ball* v. *Freeman,* 77 W. Va. 156. Generally, a provision, effect, or purpose is not read into a written instrument as having been implied, unless necessity therefor is found in the terms used, or the purposes expressed therein. *White* v. *Bailey,* 65 W. Va. 573.

It is well settled that natural oil and gas in place are a part of the realty. *Preston* v. *White,* 57 W. Va. 278; *Williamson* v. *Jones,* 39 W. Va. 231; *Sult* v. *Hochstetter Oil Co.,* 63 W. Va. 317. Oil and gas are not synonymous terms. And a sale or lease of oil does not embrace the right to take the gas; and *vice versa.* While they are usually found together or near each other in the same strata, though not always so, they are regarded as separate minerals, or mineral substances; and of course, either or both would be a proper subject of reservation in a deed for the land. A deed to or reservation of minerals would include both oil and gas; unless there is something in the deed or reservation which would show that the word "minerals" was not used in that comprehensive sense, as in this case. The intent of the grantor when ascertained will always control technical terms; but of course, the express language of the conveyance taken as a whole will overcome any supposed intention. Even where words have a well-defined technical meaning when employed in a deed and generally must be given such technical meaning, the context however may qualify the technical meaning so as to construe

it to conform with the grantor's intention. *Uhl* v. *Ohio River R. Co.*, 51. W. Va. 106.

It is argued by plaintiff that the reservation of the privilege of ingress and egress and of using the surface for machinery and houses, in short the mining privilege reserved by Merrill, is exclusive and would necessarily prevent the exploitation of the land for gas by any other person; and hence, it must be held that the mining privileges reserved being exclusive, the right given in the lease to Vanvoorhis by Estella V. Davis to exploit and search for gas is a cloud upon his title to the oil. We do not think so. If that should be true a lease for oil with mining privileges would exclude a lease for gas; and if one who had made a lease for oil could not lease to another for gas, he would himself be prevented from boring for gas upon his own land.

Another point is raised to the effect that the lease under question is designated at its top as an oil and gas lease, and is, therefore, a cloud upon his oil interest in the land. This designation of the paper is not within the body of the instrument, is no part of its substance, and cannot control its meaning and effect. An inspection of the lease reveals that it is a gas lease, pure and simple. The courts will look to the substance of any instrument for its scope and legal effect, and it is immaterial by what name it is called in the instrument itself, whether a lease, contract, grant or deed of conveyance; for the language used in the instrument, aside from these terms, must determine its legal effect. Courts always look to substance and not to form.

Another point is raised to the effect that the acknowledgment of the lease is defective, and therefore renders it void. It is apparent that if he has no title to the gas under the reservation in the Merrill deed, then it could be no cloud upon his title whether it be defective or valid.

We are constrained to hold that the reservation in question did not reserve to the grantor the natural gas in the land, and therefore that plaintiff's bill is without merit, and that the demurrer thereto should have been sustained. It will be so certified to the lower court.

*Reversed.*