# CHARLESTON.

### JAMES WAUGH *et als.* v. THE THOMPSON LAND & COAL COMPANY

### (No. C. C. 398.)

### Submitted April 27, 1927.   Decided May 3, 1927.

1. MINES AND MINERALS—*In Constructing Mutual Deeds to Same Land as Regards Reservation of Minerals, Court Should Consider Situation of Parties, Circumstances, Subject-Matter in Dispute, and Action of Parties Under Deeds.*

   Where two persons exchange mutual deeds to the same land, in order to carry into effect a compromise of their conflicting claims therein, one party deeding to the other the land, excluding or reserving "all *Veines* of Coal & Mineral" therein, and, "it being expressly understood" that 'he "does not convey the coal and mineral in said land, . . . nor the *priviledge* of mining the same except" so much coal as the grantee "may *kneed* for *fual* & smithing purposes;" and the exchange deed from the other person grants, "all the mineral Iron coal stone coal cannel coal. bituminous coal. and coal of whatever Kind in. or upon" the land, reciting in an habenaum that the grantee is, "To have and to 'hold . . . the mineral on the whole tract as aforesaid;" the court, in order to determine the intention of the deeds as to whether all the mineral was reserved in the one deed and granted in the other, should consider the situation of the parties, the surrounding circumstances if shown, the subject-matter in dispute, and the acts of the parties under their deeds indicating the construction placed thereon by them.   (p. 568).

   (Miner and minerals, 40 C. J. §§ 560, 565.)

2. SAME—*Mutual Deeds, One Reserving Coal and Minerals and Other Conveying All Minerals, Held to Reserve and to Grant Oil and Gas.*

   The language of the above mutually exchanged deeds, viewed

in the light of the situation of the parties, the subject-matter
and the subsequent acts of the parties, their heirs and
grantees, evidence an intention to reserve, on the one hand,
and to grant, on the other, the oil and gas underlying the
land.   (p. 574).

(Miner and minerals, 40 C. J. §§ 560, 565.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not
part of syllabi).

Case Certified from Circuit Court, Clay County.

Bill by James Waugh and others against the Thompson
Land & Coal Company and others to cancel and remove as a
cloud on title a certain deed.  Judgment sustaining defend-
ants' demurrer, and the trial court certifies the ruling.

*Reversed.*

*Oscar L. Hall* and *Poffenbarger, Blue & Dayton,* for plain-
tiffs.

*Eakle & Eakle* and *Price, Smith & Spilman,* for defendants.

LIVELY, JUDGE:

The object of plaintiffs' bill is to cancel and remove as a
cloud on their title to lands in Clay County a deed from Wm.
H. Edwards and others to John I. Thompson, dated Dec. 22,
1882, a deed from J. D. Cameron and others to said Thomp-
son, dated Sept. 6, 1897, a deed from John I. Thompson and
others to Thompson Land & Coal Company, dated March 15,
1902, an oil and gas lease from The Thompson Land & Coal
Company to H. B. Davenport, dated April 13, 1893, and by
the latter assigned to Thompson Oil Company on Nov. 8,
1923, in so far as the same purport to convey any interest
in the oil and gas in a 1500-acre tract claimed by plaintiffs,
except as to a tract of 100 acres known as the Arbogast tract,
the Reed tract of 50 acres, and the Pierson tract of 40 acres.
Defendants demurred jointly, and the court sustained the
demurrer on the ground that the bill was multifarious, and
certified the ruling for review.

It appears from the bill and exhibits that David J. Coch-
ran and Wm. H. Edwards in the year 1859 each claimed con-
flicting interests in a tract of land of 1500 acres, now in Clay

County, acquired by David J. Cochran under a sale to him by the sheriff of Nicholas County upon an execution against the West Virginia Iron Mining and Manufacturing Company, said acreage being a part of 12,300 acres originally granted to Wm. Wilson, on the south side of Elk River. In a compromise of these conflicting interests, they exchanged deeds respecting the land in controversy; and a proper construction of those two deeds is decisive of the main issue between the parties to this litigation. Plaintiffs have acquired the David J. Cochran title, and defendants derive title from Wm. H. Edwards. The controversy is over the ownership of the oil and gas in and under the 1500 acres, except the Arbogast, Pierson and Reed tracts above named. Plaintiffs assert that they own the oil and gas under the David J. Cochran title, while defendants say they are the owners under the Wm. H. Edwards title.

The exchange of deeds between Cochran and Edwards took place in July, 1859, and the deeds are dated July 20th of that year. The consideration named in each deed is the compromise of the conflicting claims. The Edwards deed in the granting clause contains the following: "The said Edwards by his said attorney (in fact) doth grant with special warranty unto the said Cochran so much of the said land exclusive of all *Veines* of Coal & Mineral as is included in the following *boundry*. but no reservation of coal & mineral is made by the said Edwards in a small tract sold by said Cochran to George Arbogast. (Here follows a description of the land by metes and bounds, containing 1500 acres.) . . . free from the Claim or Claims of him the said Edwards and all persons claiming under him with the reservations aforesaid it being expressly understood that the said Edwards does not convey the coal and mineral in said land Except the said Arbogast tract. nor the *priviledge* of mining the same except that said Cochran is to have so much of said Coal as he may *kneed* for *fual* & smithing purposes as described in a deed from said Cochran to said Edwards bearing date the 20th July 1859."

The Cochran deed, after stating the consideration to be a compromise of the conflicting claims for certain land, de-

scribing it by adjoinders, being the land purchased by Cochran at a sale under an execution against the West Virginia Iron Mining and Manufacturing Company, a part of the Wm. Wilson survey; in the granting clause says: "The said Cochran and wife do grant to the said Edwards all the mineral Iron coal stone coal cannel coal. bituminous coal. and coal of whatever Kind in. or upon the tract of land above described being ( describing the land as that purchased under the sheriff's sale), except that said Cochran is to have as much coal as he may want to use for the purposes of fuel in his dwelling house. and for smithing purposes for his own use. and the said Cochran and wife do also grant to said Edwards all their right title and interest of every Kind in and to so much of said tract acquired by him under said Sheriff sale as is not Conveyed or released to him by said Edwards, by deed bearing date 20th July 1859 Being that portion lying between. where said Cochrans upper line crosses said Sycamore Creek as run by L D Haymond, and the out side line of said 12.300 acres Survey. To have and to hold the last described tract of land and the mineral on the whole tract as aforesaid. to the said Edwards free from the Claim or Claims of the said Cochran & wife and all persons Claiming under them."

The demurrer says: (1) That the bill on its face and the exhibits show that the oil and gas under the 1500 acres in controversy vested in Wm. H. Edwards and is now vested in defendants, and that David J. Cochran had no title thereto, wherefore plaintiffs, claiming under him, have no title or interest whatsoever therein; (2) That the bill is multifarious; (3) That plaintiffs do not allege facts showing that they are in possession of the oil and gas or any part thereof.; (4) That Thompson Land & Coal Company is improperly joined as defendant. The court overruled the demurrer except as to the second ground (multifariousness), sustained the second point, holding the bill to be multifarious, and gave leave to plaintiffs to amend, if it was their desire, and on its own motion certified its rulings for review.

Logically the first ground of demurrer should be considered; for if the bill does not show title to or interest in plain-

tiffs to the oil and gas under the portions of the 1500 acres held by them, they cannot maintain their suit, and the other points of demurrer would present moot questions. We have been favored by clear oral argument and able briefs on this point by counsel for each of the parties.

It appears that Wm. H. Edwards was a resident of New York in 1859, and owned the 12,300-acre Wm. Wilson survey. David J. Cochran lived on the 1500 acres which he had purchased at the sheriff's sale. The basis of their conflicting claims does not appear. The Edwards deed to Cochran conveyed with special warranty by metes and bounds, courses and distances 1500 acres, with reservations above set out; while the Cochran deed to Edwards granted all the "Mineral Iron coal stone coal cannel coal &c." not only in the 1500 acres conveyed to him by metes and bounds by Edwards, but also in another tract, "lying between where said Cochrans upper line crosses said Sycamore Creek as run by L D Haymond, and the out side line of said 12,300 acres Survey," and to this other land so lying, he granted all his right, title and interest. As to this portion there can be little doubt that Cochran intended to deed and did deed his interest in the surface as well as the mineral, for in the habendum he says, "To have and to hold the last described tract of land and the mineral on the whole tract as aforesaid. to the said Edwards free from the Claim or Claims of the said Cochran & wife and all persons Claiming under them." It is argued that his act in conveying all his title to this portion of the land, surface and mineral, is indicative of his intention to convey all the mineral in the 1500-acre tract; and there is some merit in this contention, for under the well known canon of construction all parts of an instrument must be considered in arriving at the intention; and it is the intention which governs.

The word "mineral" in its ordinary and common meaning is a comprehensive term including every description of stone and rock deposit whether containing metallic or non-metallic substances. *Northern Pac. Ry.* v. *Soderberg*, 188 U. S. 526, 47 L. Ed. 575; *White* v. *Miller*, 118 N. Y. Supp. 1150, 140

Am. St. Rep. 618. Oil and gas are minerals. *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317; *Horse Creek* v. *Midkiff*, 81 W. Va. 616. But the plaintiffs say that the use of the word "mineral" in the two deeds of July 20, 1859, vested title in David J. Cochran to the oil and gas in the 1500-acre tract, and rely upon *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317; *Horse Creek L. & M. Co.* v. *Midkiff*, 81 W. Va. 616; *Rock House Fork Land Co.* v. *Raleigh Brick & Tile Co.*, 83 W. Va. 20; *Murphy* v. *VanVoorhis*, 94 W. Va. 475; and *McKinney's Heirs* v. *Cen. Ky. Nat. Gas Co.*, 134 Ky. 239, 120 S. W. 314. It is argued that the word "minerals" in the reservation in the Edwards deed was not intended to be used in its broad sense, but must be restricted so as not to reserve to Edwards the oil and gas. The argument is that the reservation is confined to veins of coal and mineral, and would reserve only such minerals as are found in veins, namely iron and coal and the like. Defendants say that the word "veins" as used in the deed modifies the word "coal" before which it is placed, and does not affect the meaning of the word "mineral". It may be conceded that neither of the parties contracted with reference to oil or gas, for those minerals were scarcely known at that date. But it is immaterial what minerals were known to be under the land, or were not known to be thereunder, if it was the intention to convey or reserve the mineral. *Sult* v. *Hochstetter*, 63 W. Va. 317; *Ramage* v. *So. Penn Oil Co.*, 94 W. Va. 81, 113; *Kentucky Diamond Min. &c.* v. *Transvaal*, Anno. Cas. 1912 C, page 417. While oil and gas are not found in veins, they are confined to and produced from certain well defined strata known under various names and well located in the earth's strata by the geologists. And we said in *Norman* v. *Lewis*, 100 W. Va. 432 that oil and gas were hydro-carbons, and might be considered as minerals of like kind and character as coal. Defendants also rely upon our cases cited by plaintiff, and on *Moore* v. *Henderson*, 87 W. Va. 699; *Ramage* v. *So. Penn. Oil Co.*, 94 W. Va. 81; and *Dingess* v. *Huntington*, 271 Fed. 864, to sustain the proposition that the oil and gas were reserved in the Edward's deed

and granted in the Cochran deed; wherefore plaintiffs have no interest in or claim to the oil or gas.

Where there is a grant or reservation of minerals without other words of limitation or restriction, all minerals would be granted or reserved, and if the ordinary and accepted meaning is to be changed or restricted the language used to do so must be reasonably clear to show that intent. What was the intention of these parties with respect to the mineral? Was it their intention that Edwards should have a part of the minerals such as iron and coal, and that Cochran should have the surface and all other minerals except iron and coal, and minerals of like kind and character? In determining the intention, the language used is most important, and if there is no ambiguity will control. If ambiguous or uncertain, the situation of the parties, the subject-matter, and the acts of the parties under the writing are proper to be considered. The cases cited clearly lay down this principle. It is the established rule of interpretation of ambiguous writings. The Cochran deed grants, ''all the mineral Iron coal stone coal cannel coal. bituminous coal. and coal of whatever Kind in.'' &c. The habendum, as above noted, is not only to the full title to the other tract, but includes the *''mineral* on the whole tract as aforesaid.''  These words rather strongly indicate that Cochran was parting with the entire mineral. Indicative of this is the fact that the next day after the exchange of deeds, he made two deeds, one to P. B. Cochran, granting ''the said surface and timber but no *mineral,''* in 100 acres (part of the 1500-acre tract); and the other to A. S. Waugh, to about 532 acres of this land ''with the *appeternes* of the surface of the sd parcel of land embraced in said deed.'' Numerous deeds made by Cochran's heirs and grantees purport to convey only the surface, some expressly saying that no minerals are conveyed, and others convey only their right, title and interest in law or equity which they may have, and one which recited that it was understood that mineral and mineral privileges had been reserved from the title. Whether Cochran or his heirs or devisees entered their lands on the land books in fee or for the surface only does not appear. Nothing is said about

it in the pleading. The first deed from Edwards, in this record, was made in 1882 to Cameron and another, and conveys the mineral under this 1500 acres, describing it, and the subsequent deeds under which defendants claim the oil and gas convey the mineral. These acts of the parties and their grantees indicate that Edwards expressly claimed the mineral, and that Cochran, and those holding under him, did not. His deed of 1882 was recorded and was notice to the world that he claimed the minerals from that time. It is presumed that he paid the taxes.

We have concluded from a careful study of the language of the deeds; the situation of the parties, the subject-matter, and the acts of the parties under their deeds, that it was the intention of Edwards to grant to Cochran the surface of the 1500-acre tract and to retain the minerals, and that it was the intention of Cochran to grant to Edwards the mineral in the whole tract in dispute, and his right, title and interest to all of that portion of the land in dispute and not falling within the metes and bounds set out in Edwards deed. The other points of error present only moot questions.

The ruling of the circuit court will be reversed on the first point of demurrer, the demurrer sustained on that point, and the cause remanded.

*Reversed.*