WEST VIRGINIA DEPARTMENT OF HIGHWAYS,

*a corporation*

*v.*

CLAUDE FARMER, *et al.*, CHARLES HORNOR

AND OTHERS, *intervenors*

(No. 13637)

Decided July 23, 1976.

*Orville L. Hardman* for P. E. Hornor.

*Larry L. Skeen, Ronald H. Adams* for D. E. Farmer.

CAPLAN, JUSTICE:

The sole question presented on this appeal is whether, in the circumstances revealed by the record, the sand and gravel situate on the land of Claude Farmer and Virginia H. Farmer, his wife, owners of the surface of the subject real estate, is included in a reservation of the "oil, gas and other minerals." The trial court found that sand and gravel are not included in such reservation and awarded the proceeds for the sale thereof to the Farmers. We affirm that ruling.

The West Virginia Department of Highways, needing sand and gravel for its road building program, instituted an action in eminent domain against the Farmers for the purpose of obtaining sand and gravel from their land. A trial of that action resulted in a jury verdict in the approximate amount of $33,000.00, which represented the value of the property taken and damages to the residue.

Subsequent to the jury verdict, but prior to the disbursement of the funds, the owners of the greater portion of the mineral interests in such land sought the

right and were permitted to intervene. It was their contention that, being the owners of nine-tenths of the oil and gas and other minerals in and under the Farmer land, nine-tenths of the award should be paid to them.

It is conceded by all parties that sand and gravel are normally included in the term "minerals." This was cogently stated in *Waugh v. Thompson Land & Coal Company*, 103 W. Va. 567, 137 S.E. 895 (1927), in the following language: "The word 'mineral' in its ordinary and common meaning is a comprehensive term including every description of stone and rock deposit whether containing metallic or non-metallic substances." *See, Robinson v. Wheeling Steel & Iron Co.*, 99 W. Va. 435, 129 S.E. 311 (1925); *Ramage v. South Penn Oil Company*, 94 W. Va. 81, 118 S.E. 162 (1923); and *Horse Creek Land & Mining Co. v. Midkiff*, 81 W. Va. 616, 95 S.E. 26 (1918). The intervenors charge that since sand and gravel are minerals and since they own nine-tenths of the minerals, they are entitled to that proportionate share of the award. It is the further position of the intervenors that the language is clear and unambiguous and that there is therefore no need for construction of such language.

It has long been held that where language in a deed is unambiguous there is no need for construction and it is the duty of the court to give to every word its usual meaning. 5 M.J. *Deeds* §66. *See also, Burdette v. Bruen*, 118 W. Va. 624, 191 S.E. 360 (1937), and *Tate v. United Fuel Gas Co.*, 137 W. Va. 272, 71 S.E.2d 65 (1952). However, where an ambiguity is introduced by the restrictive language, making unclear the intention of the grantors in reserving minerals from a conveyance, construction of the language is in order and the surrounding circumstances and actions of the parties may be considered. *Burdette v. Bruen, supra.*

The language in the deeds in the chain of title to the subject land did not specifically reserve the sand and gravel but only "the oil, gas and other minerals in and under said land." This language, considered along with the surrounding circumstances and past activities con-

cerning this property, creates an ambiguity as to the intent of the grantor. The record reveals that from February 2, 1911, the date of the original deed in this case, sand and gravel were not sold from the Farmer land until this eminent domain proceeding. The predecessor in title to Mr. Farmer testified that he was unaware of any sale of sand in this area; that he was aware of the existence of sand when he purchased the land; and that he purchased and used the land strictly for farming. In these circumstances it seems remote that a reference to "minerals" in a reservation was intended to include sand and gravel.

In order to resolve this ambiguity accepted rules of construction must be employed. One such rule of construction, *ejusdem generis*, has been so used. *Ejusdem generis* means of the same kind, class or nature. Under that rule, where general words follow an enumeration of persons or things, such general words are not to be construed in their widest extent but are to be held as applying only to persons or things of the same kind, class or nature as those specifically mentioned. *Black's Law Dictionary* 608 (4th ed. 1951). *See,* 10 M.J. *Interpretation and Construction,* §13. *See also, Bischoff v. Francesa,* 133 W. Va. 474, 56 S.E.2d 865 (1949); *Neekamp v. Huntington Chamber of Commerce,* 99 W. Va. 388, 129 S.E. 314 (1925); and *Jones v. Island Creek Coal Co.,* 79 W. Va. 532, 91 S.E. 391 (1917). As the language under scrutiny does not plainly manifest a contrary intent, we think the doctrine of *ejusdem generis* fully applies.

Applying this doctrine to the language of the reservation in the instant case, the enumeration of oil and gas makes meaningless the term "other minerals," except for minerals which are of the same kind, class or nature, that is, petroleum products. A grant or reservation of specifically named minerals conveys and reserves rights only in those minerals. *See, Ramage v. South Penn Oil Company,* 94 W. Va. 81, 118 S.E. 162 (1923) and *Prindle v. Baker,* 116 W. Va. 48, 178 S.E. 513 (1935). Under this

doctrine, then, sand and gravel are excluded from the reservation.

A further rule of construction which may be applied in resolving this case is that where an ambiguity exists in an instrument, the language will be construed against the grantor. In Syllabus No. 2 of *Neekamp v. Huntington Chamber of Commerce, supra,* the Court said: "Restrictive covenants are to be strictly construed against the person seeking to enforce them, and all doubts must be resolved in favor of natural rights and a free use of property, and against restrictions." In the case before us the intervenors seek to include sand and gravel in the reservation; the Farmers seek a free use of their property.

In other jurisdictions such reservations have been held to exclude sand and gravel from the term "other minerals." In *State ex rel. State Highway Commission v. Trujillo,* 82 N.M. 694, 487 P.2d 122 (1971), rock, taken in exposed state from the landowner's property by the Highway Commission, which had no rare character or value and was useful only in road building, was not intended to be reserved as "coal and other minerals" and the court held that the land owner was entitled to be compensated for such material. *See, Dawson v. Meike,* (Wyo.) 508 P.2d 15 (1973); *Elkhorn City Land Company v. Elkhorn City,* (Ky.) 459 S.W.2d 762 (1970); and *Harper v. Talledega County,* 279 Ala. 365, 185 So.2d 388 (1966).

Claude and Virginia Farmer purchased the subject land for the purpose of engaging in farming. The evidence adduced reveals that the land had always been used for that purpose. No owner of the minerals in the past had ever attempted to exercise any control whatsoever over the sand and gravel. It is readily discernible that the reservation of the minerals created in 1911, did not intend to include sand and gravel. Were it otherwise, the sand and gravel which lay principally on the surface, could be taken by the owners of the minerals and the surface owners could be deprived entirely of the use of such surface. The conveyance to the Farmers would

be useless. Such was the opinion of the courts in Colorado, Texas and Louisiana. In *Farrell v. Sayre,* 129 Colo. 368, 270 P.2d 190 (1954) the court said that as a general rule, where the surface of land conveyed by deed is sand and gravel, a straight mineral reservation does not include the sand and gravel. The court reasoned that the intent of the parties is ordinarily not to nullify and make useless the grant by reserving the sand and gravel without some direct specification in the reservation.

The court in *Acker v. Guinn,* (Tex.) 464 S.W.2d 348 (1971) used the following cogent language:

> "It is not ordinarily contemplated, however that the utility of the surface for agriculture or grazing purposes will be destroyed or substantially impaired. Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of "minerals" or "mineral rights" should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate." *Id.* at 352.

It was held in *Holloway Gravel Co. v. McKowen,* 200 La. 917, 9 So.2d 228 (1942), that a reservation by sellers of land of "minerals, oil and gas rights" did not permit the right to exploit the land for sand and gravel where its recovery would destroy the surface of the land which had been conveyed by the sellers to a farmer who purchased the land for agricultural purposes. Claude Farmer, who desires to farm his land, is entitled to no less.

For the reasons stated herein the judgment of the Circuit Court of Jackson County is affirmed.

*Affirmed.*