FILED

**April 17, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0326 – *West Virginia Department of Transportation, Division of Highways, v. Douglas R. Veach, et al.*

Justice Ketchum, concurring:

What does the word "mineral" mean when it is used in a deed, will, or other document conveying an interest in land? I give great credit to the DOH's appellate counsel for arguing this mineral question on appeal, and – unlike the DOH's original trial counsel – for competently attempting to defend the public fisc. The majority opinion properly did not consider appellate counsel's well-reasoned arguments because the original trial counsel had stipulated the answer and failed to preserve the question for appeal.

However, I am certain the question of the meaning of "mineral" will again come before the trial courts, or even this Court, in the future. I offer this concurrence as a proposed answer.

Many courts over the last century-and-a-half have struggled with the meaning of "mineral," largely because they have presumed the word is inherently ambiguous. Read together, the court cases trying to define "mineral" are highly confusing and often contradictory. The legal definition of "minerals" is "the tarbaby of natural resources law, because the more courts attack it, the more stuck they become."[1]

---

[1] John S. Lowe, "What Substances are Minerals?," 30 Rocky Mtn. Min. L. Inst. § 2.01 (1984). *See also* Don Emery, "What Surface is Mineral and What Mineral is Surface," 12 Oklahoma L. Rev. 499 (1959) (describing interface between meanings of "mineral" and "surface" as a "paradox.").

1

I do not believe that the word "mineral" is inherently ambiguous when used as a term of conveyance. As I discuss below, at its heart, the word "mineral" has a general and clear legal meaning. Moreover, that meaning fits within the general intentions and expectations of the parties to the conveyance.

Deeds, wills, and contracts embody the intentions of the parties to those writings. Hence, a fundamental rule of real estate law is that any interpretation of a writing conveying an interest in land will be guided by the parties' intent. Remember that as the lodestar. "The controlling factor in the interpretation of deeds, wills and contracts is the intention of the parties[.]" *Murphy v. Van Voorhis*, 94 W.Va. 475, 477, 119 S.E. 297, 298 (1923).

The definition of any subpart or fraction of a parcel of land (such as an easement, a life estate, the "surface estate" or the "mineral estate") always derives its meaning from its relation to the entire parcel. The starting point of all real estate law is that "a parcel of land includes all interests and estates therein from the center of the earth to the heavens."[2] The fee simple owner of an entire parcel of land can carve the title into smaller ownership interests; for instance, the owner "may sever the land into separate surface and mineral estates[.]"[3] The meanings for the words "surface" and "mineral" are,

---

[2] *State by Dep't of Nat. Res. v. Cooper*, 152 W.Va. 309, 315, 162 S.E.2d 281, 284 (1968). *See also Faith United Methodist Church & Cemetery of Terra Alta v. Morgan*, 231 W.Va. 423, 429-30, 745 S.E.2d 461, 467-68 (2013) ("The common law rule—*cujus est solum ejus est usque ad coelum et ad inferos*—is that a land owner with a fee simple title owns everything over the land and under it to the center of the earth.").

[3] *Id.*, 231 W.Va. at 430, 745 S.E.2d at 468.

2

therefore, intertwined. Like a mathematical equation, the sum of the parts is equal to the land parcel as a whole. When landowners convey or reserve "the minerals" in a writing, they do not think of those substances as an abstract, existential concept; they think of them in relation to the surface and to the entire parcel of land.

As we discussed at length in *Faith United Methodist*, courts have struggled to delineate a meaning for the word "surface" when used in deeds, wills and contracts. Like the search for the meaning of "minerals," these court cases stretch back to the mid-1800s. Those courts usually presumed that the word "surface" was ambiguous and then strained to divine the parties' intended meaning.

This Court, however, rejected any presumption of ambiguity for the word "surface" in *Faith United Methodist*. The case involved a 1907 deed conveying ownership to "the surface only" of a parcel of land. Over a century later, the owner of "the surface only" claimed the word "surface" was, as a matter of law, ambiguous and included underground minerals. We rejected that presumption of ambiguity and found, in Syllabus Point 2, that the word surface has a broad, clear meaning:

> The word "surface," when used in an instrument of conveyance, generally means the exposed area of land, improvements on the land, and any part of the underground actually used by a surface owner as an adjunct to surface use (for example, medium for the roots of growing plants, groundwater, water wells, roads, basements, or construction footings).[4]

---

[4] 231 W.Va. at 425, 745 S.E.2d at 463.

3

Hence, the "surface estate" is everything on top of a parcel of land plus whatever lurks below that it reasonably takes to make that estate function. A surface estate is not merely the paper-thin crust of soil seen with the naked eye. The surface includes dirt deep enough to grow a tree, or a bush, or a bushel of beans. It includes space deep enough to plant a telephone pole, to run irrigation lines, geothermal loops, water wells, and water, sewer, and gas lines. There is enough depth to the surface to install a septic tank and accompanying leach fields. There is also enough depth for a building's foundation, which depending on the building style could include a basement or a parking garage. Reasonable use of a surface estate, based upon soil type, allows for a foundation reaching from just below the frost line or all the way down to solid bedrock.

The instant case[5] implicated the opposite side of the land-ownership coin: what is the definition of a mineral estate?

The DOH's appellate counsel argued that limestone, as a matter of law, *is not* a mineral and *not* a part of the mineral estate.[6] I will admit that there is a superficial appeal to the DOH's appellate argument. This Court's goal in the law of land ownership is to eradicate confusion from land titles and prevent uncertainty from arising in the

---

[5] The same issue was implicated in the sister case to this one. *See W.Va. Dep't of Transportation v. Newton*, 235 W.Va. 267, 773 S.E.2d 371 (2015) (*Newton I*) and *W.Va. Dep't of Transportation v. Newton*, ___ W.Va. ___, ___ S.E.2d ___ (No. 16-0325, March 7, 2017) (*Newton II*).

[6] Problem is, trial counsel for the DOH stipulated, in this case and in *Newton I*, that limestone *is* a mineral. *See Newton I*, 235 W.Va. at 273 n.13, 773 S.E.2d at 377 n.13.

4

future.[7] Adopting a black-letter rule that limestone is not and will never be a mineral, as a matter of law, certainly meets that goal and creates clarity.

Such an approach, however, would join a nationwide crazy-quilt pattern of absurd decisions finding certain substances that people obviously, intuitively, or scientifically call minerals are not, legally, minerals. For instance, Pennsylvania thinks that oil and gas, as a matter of law, are not minerals.[8] Indiana says a reservation of "oil, gas, and other minerals" in a deed does not include coal.[9] Arkansas decided that bauxite (the material that is refined into aluminum) is not a "mineral deposit[]."[10] Michigan concluded that a reservation of "minerals" did not include marble,[11] while Wyoming found a reservation of "oil, gas, and kindred minerals" did not include uranium.[12] Even West Virginia has joined the melee, holding that brick-making clay is not incorporated by

---

[7] *Faith United Methodist*, 231 W.Va. at 431, 745 S.E.2d at 469.

[8] *Dunham v. Kirkpatrick,* 101 Pa. 36 (1882) (the phrase "all minerals" does not include petroleum oil). The "Dunham Rule" was recently reaffirmed in *Butler v. Charles Powers Estate ex rel. Warren*, 65 A.3d 885 (Pa. 2013) (reservation of "one-half the minerals and Petroleum Oils" did not include natural gas within shale).

[9] *Besing v. Ohio Val. Coal Co. of Kentucky*, 293 N.E.2d 510, 512 (Ind. App. 1973).

[10] *Carson v. Missouri Pac. R. Co.*, 209 S.W.2d 97, 99 (Ark. 1948) (reservation of "all coal and mineral deposits" did not include bauxite).

[11] *Deer Lake Co. v. Michigan Land & Iron Co.*, 50 N.W. 807, 809 (Mich. 1891).

[12] *Dawson v. Meike*, 508 P.2d 15, 18 (Wyo. 1973).

the phrase "minerals of every kind and description."[13]  And I will not even begin to distill the host of conflicting cases which say that sand and gravel are, or are not, encompassed by the word "mineral."[14]

If this Court were to presume that the word "mineral" is ambiguous, it means that every deed using that word is subject to challenge in the courts.  Ambiguity in real estate law leads to blind groping by the courts, promotes instability of titles and encourages litigation. Many decades after a conveying document was drafted, alleged owners will introduce parol evidence of facts peculiar to the transaction to create their own subjective perception of the word's meaning.[15]  Through the passage of time,

---

[13] *Rock House Fork Land Co. v. Raleigh Brick & Tile Co.*, 83 W.Va. 20, 97 S.E. 684 (1918).

[14] *See*, *e.g.*, A.G. Barnett, "Clay, Sand, or Gravel as 'Minerals' within Deed, Lease or License," 95 A.L.R.2d 843 (1964).  *Compare Sult v. A. Hochstetter Oil Co.*, 63 W.Va. 317, 61 S.E. 307, 310 (1908) ("'Mineral' will therefore prima facie include . . . every kind of stone, flint, marble, slate, brick earth, chalk, gravel, and sand[.]") and *Rock House Fork Land Co. v. Raleigh Brick & Tile Co.*, 83 W.Va. at 97 S.E. at 685 ("Numerous holdings in particular cases might be found to the effect that stone used for road making and paving, limestone, flint stone, slate, clay, and other like materials, are minerals[.]") with Syllabus Point 4, *W.Va. Dep't of Highways v. Farmer*, 159 W.Va. 823, 226 S.E.2d 717 (1976) ("A straight mineral reservation does not ordinarily include the sand and gravel.").

[15] *See*, *e.g.*, *Monon Coal Co. v. Riggs*, 56 N.E.2d 672, 674 (Ind.App. 1944) (use of the word "minerals" without any additional definition creates uncertainty and ambiguity that must be construed).

lawyers, landmen and title abstractors will be perpetually employed to haggle over the meaning of "mineral" as it is used in the writing.[16]

To combat the *ad hoc*, mineral-by-mineral approach used by the courts, the Uniform Law Commissioners took an opposite approach. It proposed a statutory definition for the word "mineral" that, essentially, compiled a shopping list of the substances that *are* presumed to be minerals. In the 1990 Model Surface Use and Mineral Development Accommodation Act, the Uniform Law Commissioners suggested the following definition for "mineral":

> "Mineral" means gas, oil, coal, other gaseous, liquid and solid hydrocarbons, oil shale, cement material, sand and gravel, road material, building stone, chemical substance, gemstone, metallic, fissionable and nonfissionable ores, colloidal and other clay, steam and other geothermal resources, and any

---

[16] Courts have employed a cornucopia of approaches to divine this subjective intended meaning of mineral, including examining if "mineral" is tempered by another word in the writing such as "all," "of all kind," or "of every description;" asking if the substance at issue was thought of as a "mineral" because it had some intrinsic special value apart from the soil or was capable of economic production at the time of writing; or applying *ejusdem generis* to discern if the substance in question is of the same kind or nature as other mineral substances listed in the writing. Courts have also applied the "surface destruction test," and found a conveyance of "minerals" does not include a substance that can only be extracted by destroying the surface, reasoning an interpretation otherwise would leave the surface owner with nothing. *See* Debra Dobray, "Oil Shale, Tar Sands, and the Definition of a Mineral: An Old Problem in a New Context," 22 Tulsa L.J. 1, 9-20 (1986). Another approach is the community knowledge test, which asks whether, at the time the conveyance was made, the parties knew if a particular mineral substance existed or was being extracted in the area. David E. Pierce, "Toward a Functional Mineral Jurisprudence for Kansas," 27 Washburn L.J. 223, 226-228 (1987).

other substance defined as a mineral by any law of this State.[17]

Surprisingly, my research shows that in the 1920s this Court bandied about definitions of "mineral" that were even more expansive than that offered by the Uniform Law Commissioners. This Court said:

> The word "mineral" in its ordinary and common meaning is a comprehensive term including every description of stone and rock deposit whether containing metallic or non-metallic substances. . . . [I]t is immaterial what minerals were known to be under the land, or were not known to be thereunder, if it was the intention to convey or reserve the mineral. . . .
>
> Where there is a grant or reservation of minerals without other words of limitation or restriction, all minerals would be granted or reserved, and if the ordinary and accepted meaning is to be changed or restricted the language used to do so must be reasonably clear to show that intent.[18]

---

[17] Uniform Law Commissioners' Model Surface Use and Mineral Development Accommodation Act, § 2(b) (1990). This section is patterned after § 2(b) of the Uniform Dormant Mineral Interests Act of 1986, which provides:

> "Minerals" includes gas, oil, coal, other gaseous, liquid, and solid hydrocarbons, oil shale, cement material, sand and gravel, road material, building stone, chemical substance, gemstone, metallic, fissionable, and nonfissionable ores, colloidal and other clay, steam and other geothermal resource, and any other substance defined as a mineral by the law of this State.

[18] *Waugh v. Thompson Land & Coal Co*, 103 W.Va. 567, 571-573, 137 S.E. 895, 897 (1927). The federal courts accepted *Waugh* as an extensive and comprehensive definition of the term "mineral." *See Stowers v. Huntington Dev. & Gas Co.*, 72 F.2d 969, 972-973 (4th Cir. 1934) ("[I]t is firmly established in the law of West Virginia that the word 'mineral' in its ordinary meaning is a comprehensive term, including every substance which can be got underneath the surface, and, if the intention to reserve or convey minerals exists, it is immaterial whether the parties knew what minerals were or

8

Viewing minerals in this broad, general fashion, the Court of the 1920s viewed ownership of mineral rights as "virtual ownership . . . of the land between the center of the earth and the stratum near the top of the surface[.]"[19]  For reasons unclear, this approach by the Court has fallen out of vogue.

I reject an approach that picks and chooses which substances are minerals, and which are not.  I reject these arbitrary legal determinations of the meaning of "mineral" for a fundamental reason: they ignore the *general* intent of the parties to a deed, will or contract.  Too many cases are nothing more than after-the-fact calculations of the parties' *specific* intentions, that is, whether they specifically intended this or that substance to be a mineral.  These post-hoc determinations overlook the fact that, most often, the parties never gave any *specific* thought to the problem, and instead *generally and broadly* intended to reserve or convey all minerals.  Further, these determinations are

---

were not present."). *See also*, *Horse Creek Land & Min. Co. v. Midkiff*, 81 W.Va. 616, ___, 95 S.E. 26, 27 (1918) ("The term 'mineral,' when employed in conveyancing in this state, is understood to include every inorganic substance which can be extracted from the earth for profit, whether it be solid, as stone, fire clay, the various metals and coal, or liquid, as, for example, salt and other mineral waters and petroleum oil, or gaseous, unless there are words qualifying or limiting its meaning, or unless from the deed, read and construed as a whole, it appears that the intention was to give the word a more limited application.").

[19] *Robinson v. Wheeling Steel & Iron Co.*, 99 W.Va. 435, 129 S.E. 311, 312 (1925).

"completely without value for use in the future in determining the character of substances which remain unknown or are presently considered to have no intrinsic value."[20]

When landowners separate ownership of the "minerals" in their land from ownership of the "surface" of the real estate, they generally and broadly intend to create two separate property interests. They intend for these two estates to be indefinite in duration and to be disposable by sale, inheritance or gift. Owners convey an interest in land to a recipient knowing that, in a hundred years, the use of the land may change. Surface used for farmland today may be a city office complex tomorrow. Worthless mineral shale too deep underground yesterday can today produce natural gas through hydraulic fracturing.

When property interests are so separated, "The term 'surface estate' is generally used to describe all the rights except those included in the 'mineral estate.'"[21] In other words, once the surface estate is carved out of the overall parcel, we should assume that everything else is the mineral estate. This will accord with the parties' *general* intent.

In a seminal article published in 1949, Professor Kuntz supported just such an expansive definition of the term "minerals" based upon the general intent of the parties. Professor Kuntz acknowledged that where parties made clear, specific

---

[20] Eugene O. Kuntz, "The Law Relating to Oil and Gas in Wyoming," 3 Wyo. L.J. 107, 112-13 (1949), reprinted in 34 Okla. L. Rev. 28, 34-35 (1981).

[21] David E. Pierce, "Toward a Functional Mineral Jurisprudence for Kansas, 27 Washburn L.J. 223, 224 (1987).

expressions of intent about a substance in a writing, that intent should be given effect. But in those cases where the parties used a general, generic word like "mineral," courts should not create artificial tests and presumptions to create a non-existent, specific intent. He said:

> The contradiction and conflict between the cases on the point [of the meaning of the word "minerals"] arise from the very fact that the courts are seeking to give effect to an *intention* to include or exclude a *specific* substance, when, as a matter of fact, the parties had nothing specific in mind on the matter at all. It is submitted that an intention test is the proper one, but not as applied heretofore. The intention test should be the *general intent* rather than any supposed but unexpressed *specific intent*, and, further that general intent should be arrived at, not by defining and re-defining the terms used, but by considering the *purposes* of the grant or reservation in terms of manner of enjoyment intended in the ensuing interests.[22]

Professor Kuntz went on to offer the following general definition for the word mineral:

> When a general grant or reservation is made of all minerals without qualifying language, it should be reasonably assumed that the parties intended to sever the entire mineral estate from the surface estate, leaving the owner of each with definite incidents of ownership enjoyable in distinctly different manners. The manner of enjoyment of the mineral estate is through extraction of valuable substances, and the enjoyment of the surface is through retention of such substances as are necessary for the use of the surface, and these respective modes of enjoyment must be considered in arriving at the proper subject matter for each estate.

---

[22] Eugene O. Kuntz, "The Law Relating to Oil and Gas in Wyoming," 3 Wyo. L.J. at 112.

Applying this intention, the [mineral] severance should be construed to sever from the surface all substances presently valuable in themselves, apart from the soil, whether their presence is known or not, and all substances that become valuable through development of the arts and sciences, and that nothing presently or prospectively valuable as extracted substances would be intended to be excluded from the mineral estate.[23]

Accordingly, should a question arise in the future as to the meaning of the word "mineral" in a writing, courts should look to the general intent of the parties. When a deed, will or other conveyance includes a general grant or reservation of all minerals without clear qualifying language, a court should reasonably assume that the parties to the writing intended to sever the entire mineral estate from the surface estate. The mineral estate includes all substances presently valuable in themselves, whether their presence is known or not, and all substances that become valuable through development of the arts and sciences.[24]

This definition recognizes, wholly separate from the meaning of the word mineral, that the mineral owner and surface owner have related duties to one another. The mineral owner owes a duty of subjacent support to the surface, while the surface owner must provide reasonable access to remove minerals. "The surface estate is

---

[23] 3 Wyo. L.J. at 112-113.

[24] *See Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984) ("[T]he general intent of parties executing a mineral deed or lease is presumed to be an intent to sever the mineral and surface estates, convey all valuable substances to the mineral owner regardless of whether their presence or value was known at the time of conveyance, and to preserve the uses incident to each estate.").

burdened with the right of access, and the mineral estate is burdened with the right of the surface owner to insist that the surface be left intact and that it not be rendered valueless for the purposes for which it is adapted, by depletion of sub-surface or surface substances."[25]

A conveyance of a mineral estate implicitly carries with it the right of ingress, egress and reasonable surface use, otherwise the mineral conveyance can be rendered wholly worthless by a surface owner who denies access. Conversely, a surface estate cannot be made worthless through the mineral owner's actions, and the surface owner is entitled to damages caused by production operations, damages that vary depending upon whether the mineral owner's acts were negligent or intentional. Under the definition offered by Professor Kuntz, the mineral owner can make reasonable use of the surface for exploration and extraction, but must compensate the surface owner for any damage caused to the surface estate.

If the goal of this Court is to eradicate confusion from land titles and prevent uncertainty from arising in the future, then this broad definition of "mineral" will achieve that goal. A broad definition promotes certainty at the same time it favors the parties' general intent. Such a definition will preserve a title examiner's ability to determine ownership of land purely from the record. It will expedite the ability to sell

---

[25] 3 Wyo. L.J. at 113. *See also* Emery, 12 Oklahoma L.Rev. at 517 ("[U]nder certain circumstances the surface and mineral estate should be considered not only mutually dominant, but mutually servient, and that under certain circumstances the owner of the surface estate should receive damages when the enjoyment of the owner of the mineral estate renders impossible the enjoyment of the surface estate by its owner.").

and purchase these estates in land, and will allow the owners of the mineral estate and surface estate to plan and develop their interests efficiently.  As one commentator noted, a clear and broad definition of "mineral" solves many problems:

> [I]t encourages stability and certainty of land titles by completely severing the minerals from the surface. Severing the two estates eliminates confusion over title to unspecified minerals. Title readers interpreting a title under this approach know immediately, without looking beyond the words of the grant or reservation itself, the extent of the mineral estate.[96] The test accommodates the passage of time and development of technology, because any new substance that is discovered or attains special value simply becomes part of the mineral estate.[26]

And, of course, a clear definition shields the courts from unnecessary litigation.

---

[26] Brant M. Laue, "Interpretation of 'Other Minerals' in A Grant or Reservation of A Mineral Interest," 71 Cornell L. Rev. 618, 637 (1986).