**UNITED STATES of America, Plaintiff,**

v.

**Sam G. POLINO, Joseph Polino, A. R. Steele, Frank Delsardo and Bowden Coal Company, Defendants.**

Civ. A. No. 250–E.

United States District Court
N. D. West Virginia, at Elkins.

June 6, 1955.

John R. Morris, U. S. Atty., Clarksburg, W. Va., Roderick A. Devison, Asst. U. S. Atty., Fairmont, W. Va., for plaintiff.

Cyrus S. Kump, Elkins, W. Va., for defendants.

BOREMAN, District Judge.

It becomes necessary in this case to determine, as a matter of law, whether or not a reservation of coal and mining rights contained in a certain deed carried with it the legal right to employ mining methods known as "strip mining" in the mining and removing of certain coal described in the pleadings.

By deed dated the 28th day of June, 1917, a tract of land containing 1,120.24 acres, situate in Randolph County, in the State of West Virginia, was conveyed to the United States of America by Davis Land Company, a corporation. A certain portion of said acreage, known as Tract No. 22, located in Randolph County in the Northern District of West Virginia, was subsequently set apart by the United States for the purpose of protection of water sheds, the prevention of erosion, the growth of timber, the development of wild life and recreation, the same being a part of lands generally designated as Monongahela National Forest.

The deed from Davis Land Company to the United States contains the following reservation of the minerals and mining rights:

### "Reservation

"There is also excepted from the operation of this deed and reserved to the party of the first part, its successors and assigns, the right to mine and remove minerals from the above described land herein conveyed, provided that the mining and removal of minerals so reserved shall be done strictly in accordance with the following rules and regulations prescribed by the Secretary of Agriculture, which said rules and regulations are hereby incorporated in and made a part of this deed of conveyance, to the United States as required by Section 9, of the Act under which these lands are acquired, and provided further that, to secure the faithful observance of these rules and regulations the party of the first part, its successors and assigns, before commencing to mine or remove minerals, shall deliver to the proper Government officials a bond in the penal sum of Two Thousand Dollars ($2,000.00) with good and sufficient surety;

"Department of Agriculture General Rules and Regulations for the Mining and Removal of Minerals, to be Inserted in Conveyances to the United States of Lands Purchased Under the Act of March 1, 1911* (37 Stat., 961) When Mineral Rights Are Reserved.

"1. Anyone claiming the right to mine or search for minerals or mineral products in or upon lands acquired by the United States under the provisions of the Act of March 1, 1911, (Public No. 435) with a reservation of mineral rights to the grantor, must, on demand, exhibit to the Forest Officer in charge, satisfactory written evidence of right or authority derived from, through, or under the said grantor. Mining or searching for minerals except by those producing such evidence of right or authority is forbidden.

"2. In carrying on mining operations and in searching for minerals only so much of the surface shall be occupied or disturbed as is reasonably necessary for the purpose.

"3. In underground mining all reasonable and usual provision shall be made for the support of the surface, and to that end the tunnels, shafts, and other workings shall at all reasonable times be open to inspection and examination by the Forest Officers and mining experts or inspectors of the United States."

Subsequently, Davis Land Company sold and conveyed to Davis Coal Land Company, a corporation, the coal and other minerals in, upon and underlying these same lands and, by an agreement of lease dated the 10th day of December, 1941, Davis Coal Land Company leased to the defendant in this case, Bowden Coal Company, a corporation, "all the coal of the Sewell Seam, with the privilege to the Lessee, but under no obligation on its part, to mine and remove other seams thereunder". This lease agreement pertained to coal only and did not include any other minerals.

After obtaining its coal lease, Bowden Coal Company began mining operations on a part of Tract No. 22 and removed a considerable quantity of coal by the deep or shaft mine method, whereby the coal was removed from beneath the surface of the land, disturbing only so much of the surface as was necessary in conducting such operations. These lands are located in mountainous country and it was necessary to excavate and remove enough of the surface of the mountainside to provide level ground upon which to construct the Lessee's tipple, power house, other small buildings, railroad tracks and sidings and roadways. The United States recognized the right of Bowden Coal Company to conduct these

---

* Act of March 1, 1911, should be cited 36 Stat. 961.

underground mining operations and made no objection thereto.

The complaint filed by the United States charged that the Lessee of the coal, Bowden Coal Company, and certain individual defendants, without the consent or permission, and in disregard of the rights, of plaintiff, and in violation of the rules and regulations of the Secretary of Agriculture as contained in the deed from Davis Land Company to the United States, mined by the "strip mining" method a 16.3 acre area, a part of said Tract No. 22, the Monongahela National Forest land of the United States. It was further charged that this stripping operation consisted of the removal of all of the soil overlying the Sewell Seam of coal extending in each direction from the then existing deep mine opening for a total distance of a mile or more around the mountainside, thereby destroying valuable timber, top soil and young growth.

The uncovering of the seam of coal was accomplished by digging deep into the mountainside with a large power shovel, followed by a power bulldozer which pushed the earth, timber, etc., over the mountainside, leaving a level strip of ground varying in width from approximately 50 feet to several hundred feet. The Government charged that this was a strip mining operation, while the Bowden Coal Company contended that it was merely attempting to conduct an exploratory operation to determine the "lay" of the Sewell Seam of coal for the purpose of establishing other deep mine openings from which to conduct underground operations.

In arriving at a determination of the question here presented, namely, does the Bowden Coal Company have the right to conduct coal strip mining operations on these lands of the United States, this Court is bound by the decision of the United States Supreme Court, Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and is required to apply the laws of this State as contained in the decisions of the Supreme Court of West Virginia.

There are some decisions of the Supreme Court of Appeals of West Virginia relating to this question. In Oresta v. Romano Bros., 137 W.Va. 633, 73 S.E.2d 622, 625, a deed of severance of the coal from the surface, made in 1885, conveyed the surface but subject to this reservation:

" 'With the right and privilege of full and free ingress or egress in, on, beneath and over said lands for the purpose of mining, excavating, shipping and removing said coal and other minerals with all necessary and proper rights of way, roadways, and all and every privilege necessary to the full and perfect enjoyment of the rights and privileges herein reserved.' "

In the opinion the Court said:

"It is evident from the language of the reservation of the mining rights, that, at the date of the deed of severance of the coal on February 24, 1885, the parties to the deed intended that the coal should be mined and removed by the usual method then known and accepted as common practice in Mercer County, *where the lands in question are located*, and that such method, as it then existed, did not include the practice of mining and removing coal by strip mining."

In the case of West Virginia-Pittsburgh Coal Co. v. Strong, 129 W.Va. 832, 42 S.E.2d 46, 48, the Court was required to construe certain mining rights which were involved in a severance deed dated May 31, 1904, for property in Brooke County, West Virginia, such rights being expressed therein as follows:

" 'Together with the right to enter upon and under said land with employees, animals and machinery at convenient point and points, and to mine, dig, excavate and remove all said coal, and to remove and convey from, upon, under and through, said land all said coal and the coal from other land and lands and to make and maintain on said land all necessary and convenient structures,

roads, ways, and tramways, railroads, switches, excavations, air-shafts, drains and openings, for such mining, removal and conveying of all coal aforesaid, with the exclusive use of all such rights of way and privileges aforesaid, including right to deposit mine refuse on said land and waiving all claims for injury or damage done by such mining and removal of coal aforesaid and use of such privileges.' "

In its construction of these mining rights, the Court said:

"In order for a usage or custom to affect the meaning of a contract in writing because within the contemplation of the parties thereto, it must be shown that the usage or custom was one generally followed at the time and place of the contract's execution.

\* \* \* \* \* \*

"We are of the opinion, arrived at by reading the instrument as a whole, that it was the manifest intention of the parties to preserve intact the surface of the entire tract, subject to the use of the owner of the coal 'at convenient point or points' in order 'to mine, dig, excavate and remove all of said coal' by the usual method at that time known and accepted as common practice in Brooke County. We do not believe that this included the practice known as strip mining."

In Rock House Fork Land Co. v. Raleigh Brick & Tile Co., 83 W.Va. 20, 97 S.E. 684, 686, 17 A.L.R. 144, it is said:

"In this case we have no evidence as to the situation of the parties at the time of the grant, or their conduct under it, which would aid us in the interpretation of it."

The Court thus clearly indicates that evidence of this nature would be proper as an aid to ascertaining the intention of the parties in the use of the language chosen for the written instrument. The opinion states further:

"The grant of these rights is to mine, excavate, and remove all the coal; make and maintain all necessary railroads, excavations, ways, shafts, drains, drainways, and openings necessary and convenient for the mining and removal of said coal and other minerals. Substantial aid is afforded by this language in determining what the parties meant by the term 'other minerals' in the grant. The rights granted for the removal of these minerals are such rights as are incident to the production of minerals by means of mines; that is, by shafting or tunneling."

In the present case, it was shown by competent evidence that in the year 1917, and at the time of the reservation of the coal and other minerals in the deed to the United States of America, there were no coal strip mining operations in Randolph County, West Virginia, where these lands are located; that there was only one isolated operation which might be termed strip mining in another county in West Virginia, many miles from Randolph County, where the lands were rolling as distinguished from mountain land, and where the coal was only a few feet below the surface.

The defendants undertook to show by their evidence that at least two operations were being conducted in Randolph County, West Virgnia, in the year 1917 for the mining of stone by what is commonly known as the quarrying method, which involves the cutting away of mountainsides for the purpose of easy access to said stone and the removal thereof without the use of shafts or tunnels. However, it must be borne in mind that Bowden Coal Company acquired only the right to mine and remove coal, and no other minerals.

When the United States acquired these lands in 1917 subject to the coal and mineral reservation, it is obvious that both parties to that deed knew the purposes for which the United States was acquiring the land and the uses to which it was intended to be put. The reservation itself provided that the mining and removal of minerals should be done strictly in accordance with certain rules

and regulations prescribed by the Secretary of Agriculture, which rules and regulations were incorporated in the deed. Paragraph numbered 1 of such regulations referred to "the Forest Officer in charge", and in paragraph numbered 3 of the regulations, it was provided that underground mining operations and other workings "shall at all reasonable times be open to inspection and examination by the Forest Officers * * *". Paragraph numbered 2 of such regulations provides: "In carrying on mining operations and in searching for minerals, only so much of the surface shall be occupied or disturbed as is reasonably necessary for the purpose".

In a recent case instituted in the Circuit Court of Randolph County, West Virginia, by the Conservation Commission of West Virginia against D. S. Blount and others, the question was raised as to the right of the defendants to use coal strip mining methods by virtue of a reservation and exception in a deed to the State of West Virginia dated December 29, 1934, of all coal under the surface, with the right to "mine, take and remove said coal and all of it by practicable, lawful mining methods and practices, including the use of so much of the surface of said land lying west, southwest and south of said divide for erection of mining structures and plants, buildings and equipment, and for drainage and other customary purposes as may be reasonably desired, all without liability for damage to said surface or anything thereon".

By reason of the disqualification of the Circuit Judge of Randolph County, the case was removed and decided by W. Merle Watkins, Judge of the West Virginia Nineteenth Judicial Circuit. In a well considered written opinion, Judge Watkins reached the decision that the language of the reservation was not broad enough to include the mining of coal by strip mining methods and stated:

"While strip mining had been used in this State before 1934, it was not such a use or custom generally followed in Randolph County or vicin-

ity at that time. * * * While the State is bound by its contract the same as a private citizen, the purposes of the State in acquiring this land, if known to the grantor, are pertinent in determining the intentions of the parties and resulting construction of the words used by them."

In his opinion, Judge Watkins considered the cases as decided by the Supreme Court of West Virginia and cited herein, and based his conclusions upon the principles as laid down in those cases. This Court gratefully acknowledges the use of the written opinion of Judge Watkins in considering the question here presented.

There is a vast difference between deep or shaft mine coal operations and coal strip mining operations. By the former, the coal is removed by means of shafts, borings, slopes or entries which extend from an opening on the surface through tunnels and passageways to the underlying coal and are located throughout their course and extent under the earth's surface. By such method the surface, even when broken or caused to subside, is damaged, rather than destroyed.

By the latter, the vein of coal is exposed by the removal of the earth and growth above it. Thus the surface affected is completely disturbed and is either destroyed or moved to a place other than that of its original location. It is beyond all reason to conclude that the parties to the deed by which the United States acquired title to these lands, at the time of the execution of such deed, had in contemplation the possible complete destruction and removal of the entire surface of said lands, together with everything growing thereon. It is true that the reservation to the Davis Land Company pertained to "the right to mine and remove minerals" without mention of strip mining in the language of the reservation or in the general rules and regulations of the Department of Agriculture. However, this severance of the surface from the coal must be construed in the light of circumstances existing at

the time of such severance. The evidence introduced at the trial is clear that in 1917 no coal was then being mined in Randolph County or in that vicinity of West Virginia by the strip mining method.

This Court must conclude that both parties to the deed which contained the mineral reservation knew that the United States was acquiring these lands for forestry purposes and that such lands would be of little or no use for such purposes if the surface, the timber and other growth could be totally removed and destroyed. The Court holds that the defendant, Bowden Coal Company, under its lease to mine and remove coal, did not acquire the right to do so by strip mining methods.